WASHINGTON FIREPROOF BUILDING COMPANY, PETITIONER, v. COM
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70306.   Promulgated November 30, 1934.

*A. Calder Mackay, Esq.*, for the petitioner.
*A. L. Murray, Esq.*, for the respondent.

OPINION.

ADAMS: In this proceeding petitioner seeks a redetermination of a
proposed deficiency in income tax for the year 1930 in the sum of
$1,998.31, and asserts that it overpaid taxes that year and seeks
refund.

Petitioner, the Washington Fireproof Building Co., is a corpora-
tion with its principal place of business in Los Angeles, California.
During the year 1930, and for many years prior thereto, it owned
and operated a class A office building in the city of Los Angeles,
known as the Washington Building.

The Federal Reserve Bank leased a part of the Washington Build-
ing by four leases, the first executed November 1, 1919; another,
March 1, 1920; another, November 10, 1922; and another, December
1, 1922, under which leases and the renewals thereof the bank occu-
pied all of the second and third floors of the building, together
with part of the fourth floor and part of the basement. These leases,
except the first, and renewals contain the following provisions:

* * * That the premises are now in a tenantable and good condition; that
the lessee shall take good care of the premises, and they shall not be altered,
repaired or changed without written consent of the lessor, and that unless
otherwise provided by written agreement, all alterations, improvements and
changes that may be required shall be done either by or under the direction of
the lessor, but at the cost of the lessee; that all alterations, additions and
improvements made in and to the premises shall, unless otherwise provided by
written agreement, be the property of the lessor, and shall remain upon and
be surrendered with the premises; that all damage or injury done to the
premises by the lessee or by any person who may be in or upon the premises
with the consent of the lessee, shall be paid for by the lessee; and that the
lessee shall at the termination of this lease, surrender the premises to the
lessor in as good condition as reasonable and proper use thereof will permit.

* * * The lessee agrees when premises are surrendered that all injury or
damage of every kind and character to the interior of the rooms occupied by it,
and any part of the floors, wall or ceilings, shall be repaired by the lessor and

the amount expended therefor shall be paid by the lessee to the lessor upon demand.

* * * It is understood and agreed that the lessee may remove such partitions, wardrobes, plumbing fixtures and lighting fixtures, from the said premises as may be necessary to satisfactorily accommodate the requirements of the banking business of said lessee; all of said changes and alterations and replacements to be made in a good and workmanlike manner, and at the expense of said lessee and under the direction of said lessor, or its representative. All plaster and waste material shall be removed through the windows by chute to Third Street. All doors, door casings, mouldings, baseboards, chair rails, plumbing and lighting fixtures are to be marked and carefully removed and stored in the storage room of said lessee.

At the expiration of this lease, or in event of the renewal of this lease, at the expiration of such renewal period, all partitions, plumbing, woodwork, lighting fixtures, marble, etc., are to be restored and put in the same position as is shown on the enclosed plat which is intended to represent the original plan of the Fourth Floor. All said renewals are to be done in a good and workmanlike manner, and at the expense of said lessee, and to conform to original woodwork and finish which corresponds with floors above in said building. It being understood that the lessee is to pay monthly rental for said premises as called for in this lease to and including such time as the above described premises are turned over to the said lessor in accordance with the conditions as specified in this paragraph. * * *

Similar provisions to those set out above were added to the original lease after its execution.

Pursuant to the terms of the leases as set out above, the bank made many changes in the building, such as the construction of vaults, the cutting away of some of the floor space to provide additional stairways, the removal of partitions, and various other alterations.

Upon the termination of the leases in 1930, petitioner and the bank agreed upon settlement of the bank's obligation to restore the property to its original condition. This matter was stipulated upon trial as follows:

They (the petitioner) got $45,000 of which they (the petitioner) allocated $6,000 to rent and $39,000 to the amount requisite for putting the building in the condition in which they (the bank) agreed to leave it. The $6,000 was paid as rent to compensate petitioner for the use of its building during the period of three months, which it was estimated would be required to make the necessary repairs and replacements.

The petitioner's books show the $6,000 was credited to rents; $24,000 to miscellaneous income; and $15,000 to a reserve account for replacements. The company made partial restoration during the year at a cost of $8,634.46, which was charged to expense. This did not constitute full restoration of the building.

In the income tax return filed by petitioner for the year 1930, $24,000 of the amount so received from the bank was included in general income; $8,634.46 was deducted as expense and $15,000 was set up as reserve for replacements.

In his determination respondent holds that the $39,000 received by petitioner, less the $8,634.46 expense for replacements, was income to petitioner for the year 1930.

Petitioner now contends that the $39,000 received by it was not income and, therefore, not taxable; and that it overpaid its income tax for the year 1930 and seeks a refund. Respondent says that such sum was income in the nature of rent and so taxable to petitioner during the year of its receipt.

Under the authorities such payment is not rent in its proper sense. The term " rentals " must be taken in its usual and ordinary sense, that is, as applying a fixed sum to be paid at stated dates for the use of the property. *Duffy* v. *Central Railroad Co. of New Jersey*, 268 U. S. 55; *Frank & Seder Co.* v. *Commissioner*, 44 Fed. (2d) 147.

There was no testimony introduced upon the hearing showing what sum of money would be necessary to make the required replacements except the stipulation between the parties that the $39,000 was received in lieu of the bank obligation to make replacements. If it had appeared that such sum was necessary for such purpose and was expended by petitioner to make the replacements provided for in the leases, then, under the authorities, such receipt by the petitioner would not have constituted income. *Eisner* v. *Macomber*, 252 U. S. 189, 208.

There was no testimony introduced upon the hearing showing what sum of money would be necessary to make the required replacements. Testimony does not show the value of the building before or after the alterations were made. Unless it can be said that the agreement between the parties by the terms of which the bank paid petitioner the sum of $39,000 to relieve itself of the obligation to make the replacements establishes what such replacements would have actually cost in money, then we have no way of determining under the facts whether this item was income or return of capital, or whether it was partial income and partial return of capital. If petitioner had made the replacements and put its building in the condition in which the bank agreed to leave it for a sum less than $39,000, then the excess over and above the sum so expended would be income, while that expended for that purpose would be a return of capital. The agreement between the parties as to the payment is not sufficient to establish that the sum paid was necessary for the purpose of making the replacements.

Petitioner treated this matter on its books so as to suggest the replacements could be made by the expenditure of the $8,634.46 which it did expend. plus the additional amount of $15,000 which it set up as reserve for that purpose. It treated the $24,000 of the amount so received as income.

There is no authority found in the law for the reserve set up by the petitioner.

The record is in such a condition that we are unable to make a determination as to how much of the sum received by petitioner was return of capital, if any, and how much, if any, was income. In this state of the record, the testimony being insufficient to enable us to make a finding of fact on this question, it is not sufficient to overcome the presumption of the correctness of the respondent's determination and such determination must, therefore, be approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

MURDOCK, concurring: This case is correctly decided for the respondent because of a failure of proof on the part of the petitioner. However, the statements, that there would have been no income had the money been no more than was necessary to replace the portions of the building removed and had it been expended for that purpose, are fundamentally wrong and should be disregarded as dicta. The realization and computation of gain under the Federal income tax statutes never are affected by the use to which the taxpayer puts his money after he receives it. *Standard Slag Co.*, 20 B. T. A. 503; *Mary M. Shea*, 31 B. T. A. No. 513. His gain may go unrecognized under certain circumstances, but that is because of some special provision of the statute. Cf. section 112 (f) of the Revenue Act of 1928. Such special provisions deal with recognition, not with realization or computation of gain, and their very presence in the statutes indicates that in all other cases all of the gain shall be recognized regardless of what use is made of the money received. There is no suggestion that any special provision applies in this case.

Money was paid to a lessor by a lessee in lieu of replacing substantial parts of a building which the lessee had removed and had agreed to replace. The question is, How much of the money settlement is income to the lessor? The answer to that question does not depend upon what the lessor did with the money nor upon how much money would have been necessary to restore the building. If all or some part of the money might be considered rent that would be all income. If all or any part of the money was not rent but a payment to the lessor for portions of his building, then to that extent the transaction was substantially similar to a sale and must be treated for income tax purposes as a "sale or other disposition" of a portion of his building. Sec. 111. In such case he is entitled to have returned to him tax-free the original cost of the portion of the building removed but no more. If the amount of money paid for the portion of the building removed is in excess of the basis for gain or loss which the property removed

had in the hands of the owner, adjusted for depreciation and obsolescence, gain is realized. If the amount received were less than the adjusted basis, loss would be sustained. If the lessee had completely removed the building and, rather than replace it, had settled in cash, clearly the excess of the cash over the basis of the building for gain or loss to the lessor would have been income to the lessor. The principle is the same where only part of the building is removed and paid for in cash. Even if the difficulty of determining the portion of the basis against which to apply the cash were insurmountable, it would hardly change this fundamental method of determining income under the statute. Cf. *Burnet* v. *Houston*, 283 U. S. 223. But there are practical ways of determining the portion of the basis applicable to the portion of the building removed. Cf. *Harry Johnston Grant*, 30 B. T. A. 1028. When and if the taxpayer expends any of the money for making replacements, those expenditures will be capital expenditures which will increase the basis for subsequent depreciation and gain or loss. The Commissioner determined that gain was realized. His determination must be approved in the absence of proof that the excess of the amount received over the adjusted basis for the property which had been removed was less than the amount of gain determined. There was no proof of the basis, and, therefore, approval of the determination of the Commissioner is proper.

BLACK, SMITH, STERNHAGEN, MORRIS, MATTHEWS, GOODRICH, and LEECH agree with the above.