SIRBO HOLDINGS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 515–69. Filed March 13, 1974.

*Lester H. Salter*, for the petitioner.
*Marwin A. Batt* and *Marion L. Weston*, for the respondent.

### SUPPLEMENTAL OPINION

QUEALY, *Judge:* In our opinion entered January 27, 1972 (57 T.C. 530), on the basis of the facts in this case we held that the sum of $125,000 received by the petitioner in consideration for the "updating" of the restoration clause in a lease did not constitute an amount realized either from the sale or exchange of property or from the compulsory or involuntary conversion of property within the meaning of section 1231.[1] On appeal, the U.S. Court of Appeals for the Second Circuit remanded the case for reconsideration of our decision. 476 F. 2d 981 (decided March 23, 1973).

The appellate court agreed with our holding that there was no compulsory or involuntary conversion of property. However, that court remanded the case for reconsideration of our decision that the payment

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

did not constitute an amount realized from the sale or exchange of property used in the trade or business within the meaning of section 1231. Insofar as material herein, section 1231 provides as follows:

SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

It will be noted that the statute, by its very terms, recognizes that there may be a distinction between "a sale or exchange" of property and "the compulsory or involuntary conversion" of property. This distinction stems in part from the decision of the Supreme Court in *Helvering* v. *Flaccus Leather Co.*, 313 U.S. 247 (1941). See also *Brown* v. *Commissioner*, 380 U.S. 563, 571 (1965); *Chicago, Burlington & Quincy R. Co.* v. *United States*, 455 F. 2d 993, 1002–1004 (Ct. Cl. 1972).

In *Helvering* v. *Flaccus Leather Co., supra*, the taxpayer's plant was destroyed by fire. As a consequence, the taxpayer received payment from its insurer for the loss of its buildings, machinery, and equipment. The property had been fully depreciated. The taxpayer contended that the insurance proceeds should be treated as a gain from the sale or exchange of its property. In denying such claim, the Supreme Court said:

Generally speaking, the language in the Revenue Act, just as in any statute, is to be given its ordinary meaning, and the words "sale" and "exchange" are not to be read any differently. Compare *Helvering* v. *Hammel*, 311 U.S. 504; *Fairbanks* v. *United States*, 306 U.S. 436; *Burnet* v. *Harmel*, 287 U.S. 103. Neither term is appropriate to characterize the demolition of property and subsequent compensation for its loss by an insurance company. Plainly that pair of events was not a sale. Nor can they be regarded as an exchange, for "exchange," as used in § 117(d), implies reciprocal transfers of capital assets, not a single transfer to compensate for the destruction of the transferee's asset. [313 U.S. at 249.]

The Congress thereupon enacted section 117(j) of the Revenue Act of 1942, wherein it was specifically provided that gain realized as a result of the compulsory or involuntary conversion of property shall

be treated the same as a gain from the sale or exchange of such property.[2]

The amendment in question merely modified the decision in the *Flaccus* case as applied to a payment received as a result of the compulsory or involuntary conversion of property where the payor received nothing in exchange. In all other cases, the requirement that there be a "sale or exchange," as defined in the *Flaccus* case, remained unchanged.

We find no justification in the absence of congressional action to disregard the tests established in *Helvering* v. *Flaccus Leather Co.*, *supra*, in the characterization of the transaction between the petitioner and its lessee. Measured by those standards, there was no sale or exchange of any property or property right by the petitioner.

The determination of the rentals for an additional term and the determination of the amount to be paid for updating the restoration clause were but steps in a single negotiation relating to the terms upon which the lessee would continue to occupy the property. As a result, the petitioner received a "premium" in the form of a payment for updating the restoration clause and the lessee was given a new lease upon terms more favorable with respect to restoration than its prior lease.

The liability of the lessee encompassed not only the replacement of curtains, seats, and the like, which had long since been removed and presumably "junked," but also the removal of the walls, partitions, and other installations made by the lessee to convert the property to its use. To the extent that the obligation to restore related to the seats, carpets, curtains, and other property which had been removed by the lessee in the conversion of the theater, we are dealing with depreciable assets, the cost of which had long since been recovered by the petitioner through the composite depreciation claimed on the property as a whole. To the extent that the obligation related to the cost of removing walls, partitions, and wiring installed by the lessee, it was incumbent upon the petitioner to show that the modifications damaged its property in the economic sense. At this time there could be no proof of any damage or economic loss on account

---

[2] In explanation thereof, the report of the Committee on Finance states:

"Section 117(j), as added to the Internal Revenue Code by subsection (b) of this section, provides special treatment for the gains and losses upon the sale or exchange of depreciable property and of land, held for more than 6 months, and for the gains and losses upon the compulsory or involuntary conversion of such depreciable property and land and of capital assets held for more than 6 months. [S. Rept. No. 1631, 77th Cong., 2d Sess., p. 120 (1942).]"

of the changes made by the lessee. As evidenced by the new lease, the value of the property was, if anything, enhanced.[3]

*Washington Fireproof Building Co.*, 31 B.T.A. 824 (1934), and *Boston Fish Market Corp.*, 57 T.C. 884 (1972), both involved situations wherein the lessee surrendered possession of the property and, in lieu of its obligation for restoration, paid an agreed amount in liquidated damages. In the former, the taxpayer reported the excess of the amount received over the estimated cost of restoration as ordinary income. In the latter case, the Commissioner did not challenge the taxpayer's right to report the amount received as a return of capital. Neither case presented for decision the question whether a payment such as that involved in *Sirbo Holdings, Inc.*, constitutes an amount received from the sale or exchange of property within the meaning of section 1231.[4]

Notwithstanding the opinion of the appellate court remanding this case to us for consideration, we must profess our inability to distinguish in principle between our opinion in this case and the opinion of the appellate court in *Billy Rose's Diamond Horseshoe, Inc.* v. *United States*, 448 F. 2d 549 (C.A. 2, 1971), with which we are in full agreement. The term "sale or other disposition" in section 453 encompasses both the "sale or exchange" and the "compulsory or involuntary conversion" in section 1231. A transaction which was not a "sale or other disposition" under section 453, a fortiori, would not constitute a "sale or exchange" under section 1231.

Nor do we find the decision in *Billy Rose's Diamond Horseshoe* incompatible with that of the appellate court in *Commissioner* v. *Ferrer*, 304 F. 2d 125 (C.A. 2, 1962). In *Ferrer*, the court was dealing with the rights of a licensee under the copyright laws. As in the case of patents, when a licensee's rights are extinguished, those rights revert by operation of law to the licensor or owner of the copyright or patent. Cf. *United States* v. *Dresser Industries, Inc.*, 324 F. 2d 56 (C.A. 5, 1963). It is not necessary that the licensee specifically reconvey anything to his original grantor.

---

[3] Where a payment represents compensation for measurable damages to the property, this Court has held that the amount received should be charged initially to the taxpayer's basis and only the excess is taxable. *Pioneer Real Estate Co.*, 47 B.T.A. 886 (1942). However, *Sirbo Holdings* did not offer proof that it sustained any economic damage to its property which would bring it within that rule.

[4] In explaining the apparent inconsistency of his position in the *Boston Fish Market* case with his position in the *Sirbo Holdings* case, the respondent states that his concession in the former was in error. Without such concession, the *Boston Fish Market* case may well have been decided differently. The cases cited by this Court in the *Boston Fish Market* case at p. 889, which were adverted to by the Court of Appeals (476 F. 2d at 988), were mentioned only for the purpose of showing that any amount received *in excess of basis* constituted taxable income, and the reference to "sale or exchange" was made solely in that context. This Court did not undertake to make any determination as to whether the excess over basis constituted long-term capital gain as against ordinary income.

By contrast, in the *Sirbo* case, nothing passed between the parties except the sum of $125,000 paid to the petitioner by CBS. Nothing was sold, nothing was exchanged, and nothing reverted to CBS. In fact, as of the time of the payment—and even today—there can be no assurance that the obligation of CBS to restore under the new lease might turn out to be as burdensome as was such obligation under the original lease.

Accordingly, having reconsidered our opinion in this matter, we find no reason to change our views and, therefore, reaffirm that opinion.

Reviewed by the Court.

*Decision will be entered for the respondent.*