# UNION BLEACHERY v. UNITED STATES.

## No. 2193.

District Court, W. D. South Carolina,
Greenville Division.

Aug. 14, 1947.

W. B. McGowan, of Greenville, S. C., and Leonard Marshall, of Washington, D. C., for plaintiff.

Sewall Key, Acting Asst. Atty. Gen., Andrew D. Sharpe and Frank J. Ready, Sp. Assts. to Atty. Gen., and E. P. Riley, Asst. U. S. Atty., of Greenville, S. C. (Oscar H. Doyle, U. S. Atty., of Greenville, S. C., on the brief), for defendant.

TIMMERMAN, District Judge.

This action was instituted October 23, 1933, under Section 24 of the Judicial Code, 28 U.S.C.A. § 41(20), to recoup alleged illegally exacted income taxes paid by the plaintiff to Collectors of Internal Revenue, who were not in office at the time of the commencement of this action, for the years 1923 to 1928, inclusive. The aggregate amount claimed exceeds $200,-000.00.

The defendant answered the complaint on December 20, 1933, denying all material allegations thereof. Thereafter on June 26, 1940, by leave of Court, defendant served and filed an amendment to its original answer setting up special defenses.

Soon after this cause was assigned to me for hearing a pretrial conference was called and then held on December 4, 1945. Following the conference an order was entered, on February 7, 1946, in which the results of the conference were set out in some detail; the contentions of the parties were stated; a brief history of the case was detailed and many agreed points of fact were enumerated. For the purposes of this opinion that order is adopted as a part hereof.[1]

As appears in said order (Note 1), the Court now has for consideration defendant's motion for summary judgment. Among the questions raised by defendant's motion is this one:

Did the Commissioner err in denying plaintiff's claimed depreciation on its plant and properties for the years here in question, viz., $118,186.74 for 1923; $120,474.22 for 1924; $120,823.37 for 1925 and $121,-058.79 for each of the years 1926, 1927 and 1928, under the Revenue Acts of 1921, Sec.

---

[1] See order dated February 7, 1946, filed in the record of this case February 8, 1946.

498

234(a) (7), 42 Stat. 255, 1924 and 1926, Secs. 204(c) and 234(a) (7), 26 U.S.C.A. Int.Rev.Acts, pages 10, 40, 154, 187, and 1928 Secs. 23(k) and (m) and 114(a), 26 U.S.C.A. Int.Rev.Acts, pages 358, 383?

The defendant contends (1) that this issue is precluded against the plaintiff by determinations made in Union Bleachery v. Commissioner, 4 Cir., 97 F.2d 226, and Union Bleachery v. United States, 4 Cir., 79 F.2d 549, 102 A.L.R. 204; and (2) that, since the plaintiff acquired and assumed the entire corporate assets, business and liabilities of Union Bleaching and Finishing Company, under a concededly non-taxable reorganization, in consideration of, plaintiff issuing its entire capital stock in substitution of the entire capital stock of Union Bleaching and Finishing Company, and no new capital being invested, the plaintiff is not entitled as a matter of right to depreciate its properties after the effective date of the reorganization (June 30, 1922) on a basis different from the one used prior to reorganization.

Some of the facts bearing on these contentions, as disclosed by the record, are:

(1) The Union Bleaching and Finishing Company was organized under the laws of New Jersey on April 9, 1902, and from then until June 30, 1922, was continuously engaged in Greenville, South Carolina, in that branch of the textile industry known as bleaching and finishing.

(2) At a meeting of the Board of Directors of Union Bleaching and Finishing Company, held at Greenville, South Carolina, on February 1, 1922, the following resolution was duly adopted:

"It being the sense of the meeting that *the Company give up its New Jersey Charter and incorporate in South Carolina*, on motion of Mr. Montgomery, seconded by Mr. W. A. Smith, the President was authorized to carry out the necessary details including changing the corporation to 'Union Bleachery.'" (Italics added)

(3) On June 3, 1922, the plaintiff, pursuant to said resolution, was reincorporated under the laws of South Carolina (its principal place of business remaining at Greenville, South Carolina) as Union Bleachery with an authorized capital stock of $400,000, divided into 4,000 shares of the par value of $100 each, the same amount of stock and number of shares as under the New Jersey charter.

(4) On June 30, 1922, Union Bleaching and Finishing Company ceased active business operations, and the next day, July 1, 1922, turned over all of its business, property and assets to the plaintiff, and thereupon the plaintiff, under its new charter and name, took over all corporate assets and properties, assumed all debts and obligations and continued the corporate business as before without change in ownership or management.

(5) Shortly after the last mentioned date, as incidents to the reorganization, the New Jersey charter was surrendered and cancelled and the shares of stock issued thereunder were also surrendered and cancelled, the holders thereof, as an incident of reorganization, having previously accepted new and equivalent shares of stock under the South Carolina charter.

(6) On December 30, 1922, plaintiff's authorized capital stock was increased, by amendment of its South Carolina charter, from $400,000 to $1,200,000, on which date the plaintiff declared a 100% preferred stock dividend and issued and distributed pro rata to its stockholders 4,000 shares of its preferred stock. Later, on or about October 31, 1925, plaintiff declared a 100% common stock dividend and issued and distributed pro rata to its stockholders 4,000 additional shares of its common stock, thereby increasing its total outstanding shares of capital stock, common and preferred, to the authorized amount of $1,200,000.

(7) From the foregoing I find that the corporation simply changed its domicile and name, and that its business and ownership were the same on July 1, 1922, that they were on June 30, 1922.

As concerns defendant's plea of res judicata, it appears that the instant plaintiff, denominating itself as "Successor to Union Bleaching and Finishing Company" and making claim in its own right as such successor, on or about February 5, 1930, filed a suit in this court (L/1067) against the instant defendant

to recover alleged overpayments of income and profits taxes assessed against and paid by the corporation, under the name of Union Bleaching and Finishing Company, for the years 1916 to 1919, inclusive, aggregating $189,384.35. Therein plaintiff claimed that it had been allowed insufficient depreciation; that proper deductions for repairs had not been allowed; and that capital expenditures for replacements had been improperly treated as charges to plaintiff's reserves for accrued depreciation.

In that case the Commissioner used the costs of plaintiff's depreciable properties as a basis for depreciation, it also having been the basis on which plaintiff's books were kept. The plaintiff grounded its claims for refund of taxes in large part on such terms as "adjustment of depreciation," "loss of useful value," "restoration of invested capital," and "adjustment of plant value as of March 1st, 1913." While the plaintiff was successful to the extent of about three per cent. of its aggregate claim for the years 1916 to 1919, the judgment of the Court otherwise was in affirmance of the Commissioner's disallowance of plaintiff's claims of deductions for depreciation. The case was appealed to the Fourth Circuit Court of Appeals and there the judgment of the District Court was affirmed except as to minor points not here material. Union Bleachery v. United States, supra.

In the other case (Union Bleachery v. Commissioner, supra), also cited to the Court by the defendant in support of its plea of res judicata, the Commissioner having entered deficiency assessments against the plaintiff, under its old name, for the years 1920 and 1921 and the first six months of 1922, and against it, under its new name, for the last six months of 1922, the plaintiff filed with the United States Board of Tax Appeal (now United States Tax Court), on January 26, 1928, a petition, entitled "Union Bleachery, Successor to Union Bleaching & Finishing Co., Greenville, S. C., Petitioner, vs. Commissioner of Internal Revenue, * * *, Respondent," praying a redetermination of such assessments. The Tax Board confirmed the assessments aggregating up-

wards of $10,000 against the plaintiff. The Board's decision was thereafter affirmed by the Circuit Court of Appeals.

In that case Judge Northcott, speaking for the Court, among other things, said:

"Four questions are presented for consideration.

"* * * Third: *Whether the Commission erred in disallowing claimed additional deductions from the 1920 and 1921 income of the Union Bleaching & Finishing Company for items of equipment purchased and charged against depreciation reserves.* Fourth: * * * (Underscoring added)

"The petitioner kept an account covering reserve for depreciation and charged the expenditures here in question for the years 1920 and 1921 to that account as replacements. This system of bookkeeping was followed by the old company many years prior to the taxable period in controversy and is recognized as a proper method of accounting under Article 103 of Treasury Regulations 45 and 62 under the 1918 and 1921 Revenue Acts, 40 Stat. 1057; 42 Stat. 227. Under these circumstances the petitioner can not complain because these items were not treated in a different way from that in which they had been treated under the long established accounting practice of the old company." 97 F.2d at pages 229, 230.

The claims of allowance for depreciation in the instant case, in whatever form made, are not materially different from like claims made in the cited cases. Since the parties are the same and the controversy is of like character and substance in the instant case as in the two previous cases, I am of the opinion that the plaintiff is precluded by the judgments in those cases. As has been stated by the Fourth Circuit Court of Appeals:

"It is well settled that a fact or question which was actually and directly in issue in a former suit, and was there judicially determined by a court of competent jurisdiction, is conclusively settled by the judgment therein so far as concerns the parties to that action *and persons in privity with them,* and cannot be again litigated in any future action between the parties or privies

in the same or any other court upon either the same *or a different cause of action."* Aetna Casualty & Surety Co. v. Abbott, 4 Cir., 130 P.2d 40, 42, quoting from National Bondholders Corp. v. Seaboard Citizens Nat. Bank, 4 Cir., 110 F.2d 138, 143.

It is argued that Union Bleachery v. Commissioner, supra, is not controlling in this case because plaintiff "did not appeal from the determination * * * respecting its taxes for its first taxable period July 1, to December 31, 1922," and because it "abandoned its objections to the deficiency assessed against it." It is true that the plaintiff did not press in the appellate court its claim respecting the taxes assessed against it, under its new name and charter, for the period from July 1 to December 31, 1922, but it is also true that the plaintiff filed a single claim for refund of taxes paid by it, under both its old and new charters and names, for the entire calendar year of 1922, challenging therein the Commissioner's "adjustment of depreciation and of fair market value as of March 1, 1913". Further in its petition to the Board of Tax Appeals, the plaintiff contended that the Commissioner's allowances of depreciation for each of the years 1920 to 1922, inclusive, were inadequate. It also contended that Union Bleachery v. United States, supra, was not res judicata respecting depreciation allowances of subsequent tax years between the same parties. The Tax Board upheld the Commissioner and the Circuit Court of Appeals affirmed the Tax Board on all points raised in the appeal.

Certainly the Board of Tax Appeals determined, in Union Bleachery v. Commissioner, supra, that the bases and rates used in the Commissioner's computation of allowances of depreciation for the period July 1, to December 31, 1922, were correct and adequate. In this determination the plaintiff may have acquiesced since it did not question such determination in its appeal as it might have done. As stated in Southern Pac. R. R. Co. v. United States, 168 U.S. 1, 8 S.Ct. 18, 27, 42 L.Ed. 355:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them."

Most of the above quotation from the Southern Pacific case was cited in Tait v. Western Maryland Railway Co., 4 Cir., 62 F.2d 933; and in the Tait case Judge Soper, speaking for the Court, added this observation:

"* * * if a question is actually and directly in issue, and is judicially passed upon and determined in a suit, a party bound by the judgment cannot escape its effects by producing a new argument or new evidence in a subsequent action in support of the proposition decided against him. * * *" 62 F.2d 933, 935.

In further contention that the cited Union Bleachery cases are not res judicata of the issue here tendered and do not estop it in respect of its claims, plaintiff cites the case of Bankers' Pocahontas Coal Co. v. Burnett, 287 U.S. 308, 53 S.Ct. 150, 77 L. Ed. 325, and other cases antedating it, wherein it is held that, in a suit against the United States for a tax refund, a prior judgment in a case against the Collector is not res judicata even on the same issue. However neither of the cases pleaded as res judicata was against the Collector, personally or officially. One was against the United States and the other against

the Commissioner in his official capacity as the representative of the United States. Moreover Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 917, 84 L.Ed. 1263, a much later case than any cited by plaintiff, clearly supports the view that "A judgment is res judicata in a second action upon the same claim between the same parties *or those in privity with them*," (italics added) which I hold to be the case here.

Irrespective of the plea of res judicata interposed by the defendant, I am of the opinion that the facts of this case, as disclosed in the pretrial findings of fact agreed to by counsel for the parties and approved and ordered filed by Judge Lumpkin on September 6, 1940, in the order of this court entered February 7, 1946, in plaintiff's testimony, and in the numerous exhibits now on file in this court, warrant the inference that fair and adequate allowances of depreciation for the years here in question, under the applicable provisions of the Revenue Act of 1921, 1924, 1926 and 1928, were made, and that the plaintiff has no rightful ground of complaint thereabout.

As pointed out above, no essential change was effected in the ownership or management of the plaintiff by the reorganization of June 30, 1922. No new capital was invested and the reorganization was in no sense a sale or purchase of property. It follows, therefore, that the properties of the plaintiff should be valued for tax purposes without regard to the reorganization, and that the well established and long acquiesced in basis for depreciation before reorganization should not be changed after reorganization, either upward or downward, no gain having been made and no loss having been suffered thereby.

Counsel for plaintiff, in their brief, state:

"Plaintiff's tax liability is covered, for the year 1923, by the Revenue Act of 1921; for the year 1924, by the Revenue Act of 1924; for each of the years 1925, 1926 and 1927, by the Revenue Act of 1926; and, for the year 1928, by the Revenue Act of 1928, all of which are the same with respect to allowances for depreciation."

Invoking Section 234 of the Revenue Acts and Commissioner's Regulation 69, it is argued, with respect to depreciable property acquired before March 1, 1913, that the plaintiff is entitled to depreciate such property on the basis either of its cost or fair market value, whichever is higher. It is also argued that, since the plaintiff was the owner of no property in 1913 and did not acquire any until the reorganization of June 30, 1922, it is entitled to reasonable allowances of depreciation based upon the amount it paid for the property of its predecessor on that or the succeeding day.

The fallacy of the last mentioned contention is its lack of factual support. It is pure fiction to say that the plaintiff under its old name sold anything or that under its new name it bought anything merely by virtue of the reorganization. The real ownership and the actual management of plaintiff were the same both before and after reorganization. By reason of the reorganization the real owners of the corporate stock, old or new, sustained neither loss nor gain.

The book or cost value of plaintiff's plant, exclusive of land and good will, as of March 1, 1913, was a little less than $500,000, to which has been added the costs of additions since March 1913. As of December 31, 1922, the day before the commencement of the first tax year here in question, the book value of plaintiff's plant, exclusive of land, was $1,390,063.14. In its tax returns for the period ending on that date, the plaintiff scheduled its depreciable assets as follows:

| | |
|---|---:|
| Building—Brick and Frame.. | $ 404,392.19 |
| Machinery and Equipment... | 784,903.37 |
| Furniture and Fixtures...... | 8,990.55 |
| Delivery Equipment......... | 6,118.36 |
| Tenements—Frame ......... | 185,658.67 |
| Total ................. | $1,390,063.14 |

The Commissioner regrouped the scheduled properties into six classifications and assigned values to each group in the aggregate of the above total. While the plaintiff in its return for that year took a composite rate of depreciation of 5 per cent. the Commissioner applied separate rates of

depreciation to the several classifications ranging from two to twenty-five per cent.

In the instant case the Commissioner accepted the total plant costs as disclosed by plaintiff's books and returns for the years 1923 to 1928, inclusive, but added thereto several items of value, viz., for the year 1926, $379.72; for the year 1927, $6,014.33; and for the year 1928, $88.38. The aggregate of these additions as reflected in the 1928 plant values showed an increase of $6,482.44 more than the amount appearing on plaintiff's balance sheets. Accepting plaintiff's plant values, as amended to its advantage, the Commissioner allowed the plaintiff depreciation on its depreciable properties as follows: For 1923, $71,552.26; for 1924, $73,519.76; for 1925, $77,188.29; for 1926, $79,076.46; for 1927, $80,390.28; and for 1928, $81,870.34. These allowances of depreciation were based upon the actual cost of the properties as shown on plaintiff's books and on rates of depreciation that appear to be reasonable.

 Of course the purpose behind the allowance of depreciation is to provide a fund, which, at the end of the useful life of a property, if added to its salvage value, will equal its original cost. It is not to be supposed that Congress, in allowing deductions of depreciation for tax purposes, intended that a taxpayer should recoup more than his investment in depreciated property. Moreover it is to be presumed that the amount of taxes assessed against and paid by a taxpayer is correct. The burden is on the one challenging its correctness to prove its incorrectness.

 Plaintiff's main reliance to establish the fair market value of its depreciable properties, as in excess of the book value or costs thereof, is the testimony of John A. McPherson, a member of the engineering firm of J. E. Sirrine & Company. J. E. Sirrine, head of the mentioned firm, was Vice President and Director of the plaintiff; and Mr. McPherson had been connected with the firm for 38 years. He testified that he was familiar with the plant and facilities of the plaintiff; that the elements entering into his estimate of value of plaintiff's properties were "the physical property," "the type of equipment," "the earning feasibility of the plant to make money," "its efficiency," "history of earnings," "the world trend and view of the industry," "what we call its going value, also on what the world prospects of what that particular industry's future will amount to * * * in considering the fair market value, * * * very frequently they are quite substantial"; also that "the physical value of the assets of that plant would not be the market value." In addition to the foregoing the witness enumerated as important considerations in determining fair market value, "organization, sales effort and personnel that cost a great deal of money," and stated that "my personal yardstick is this that any plant, particularly a new industry or going industry, should have an earning of ten per cent of its market value. * * * if a plant is earning $100,000.00 a year I would consider its fair market value a million dollars;" and that he would "apply that rule to appraising this particular plant in question" for both "March 1, 1913 and 1922," to which he would add "expected earnings."

The witness' estimates of value, new and depreciated, for the years 1913 and 1922 are undoubtedly based to a large extent on actual earnings of later years and what he guessed to be the favorable world outlook for the bleaching industry. He gave little consideration to costs, which normally are important factors in determining fair market value. Certainly it is not to be expected that a purchaser would pay more for an article to one seller than he would have to pay another for the same article. Also the witness estimated allowable depreciations for 1913 and 1922, respectively to be approximately 7½% and 30% of his estimated fair market values of plaintiff's properties in those years. No satisfactory explanation of this method is given in his testimony, and I know of no rule by which its accuracy can be judged. The witness also made an undefined distinction between "physical value" and "fair market value," thereby indicating that he had attributed to plaintiff's properties a value that might not be realized in an open and free market. I, therefore, reject plaintiff's estimates of

value as unsatisfactory, for obviously all classes of property cannot be depreciated on the same basis or at the same rate. For instance, the wooden buildings would be entitled to a higher rate of depreciation than would brick or stone buildings.

■ The plaintiff questions the timeliness of the Commissioner's assessment and collection of a deficiency tax against plaintiff for the year 1923. This tax, including interest, amounts to $217.50. The Commissioner sent the plaintiff notice of such deficiency assessment by registered mail on March 14, 1928, which was within four years of the filing of plaintiff's return for 1923. The notice was timely and operated to extend the period for actual assessment and collection of the tax which occurred, respectively, May 26 and June 8, 1928.

■ The plaintiff raises a like question respecting the assessment and collection of a deficiency tax for the year 1924. A deficiency tax was assessed, including interest, in the amount of $3,974.16, on May 25, 1929, and it was collected June 7, 1929. On January 26, 1929, plaintiff executed a written waiver wherein it consented that the period for assessment of any deficiency for the year 1924 should be extended to December 31, 1929. By reason thereof the assessment and its collection, including interest, were timely and legal. The same is true as concerns the deficiency assessment of $2,908.97, including interest, for the tax year 1925, likewise questioned by the plaintiff.

Another claim of the plaintiff is, that it is entitled to depreciation deductions for the years 1923, 1924 and 1925 on its accounts receivable for those years, in round numbers for the following amounts, respectively, $61,500, $108,500 and $175,700. The ground of this contention is that plaintiff is entitled to have such receivables valued at cost or market value, whichever is lower. This obviously could have been accomplished in one of several ways, namely, (1) by ascertaining the worthlessness of certain receivables, if any, and charging them off during the tax year; (2) by use of a bad debt reserve which could be set up with the Commissioner's approval under Treasury regulations; or similarly (3) by use of partial charge-offs. Sec. 234(a) (5) Revenue Acts 1921 and 1924.

■ Plaintiff's business for all years in question was handled on an accrual basis. It took deductions for bad debts as follows: For 1923, $225.02; for 1924, $391.34; and for 1925, $2,011. All of these deductions were allowed by the Commissioner. The plaintiff exercised its option as to the method of treatment of its receivables, and it cannot now be heard to complain that the Commissioner acquiesced in the method adopted by it, irrespective of whether its claims for refund, or any amendments thereof, were presented within the periods allowed therefor by applicable statutes. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Charles C. Lewis Co. v. United States, D.C., 14 F.Supp. 471.

Also comprehended in defendant's motion for summary judgment is this question: Did plaintiff fail to meet the conditions precedent to maintaining suit on the claims asserted in this action? It is contended by defendant, (1) that plaintiff did file sufficiently specific claims for refunds within the time allowed by law, that is, to say within four years after dates of payment of disputed taxes for 1923 and 1924 and within three years after dates of payment of disputed taxes for 1925 and 1926, Sec. 284(b) (1) (2), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 220; and (2) that plaintiff failed to meet conditions precedent to suit on rejected claims for refunds by failing to commence this action within two years after the rejection of such claims. Sec. 3226, Revised Statutes, and Sec. 1113(a), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 324.

The above referred to sections, or parts thereof, of the Revenue Act of 1926 read as follows:

"Sec. 284(b) * * *

"(1) No such credit or refund shall be allowed or made after three years from the time the tax was paid in the case of a tax imposed by this Act, nor after four years from the time the tax was paid in the case of a tax imposed by any prior Act, unless

before the expiration of such period a claim therefor is filed by the taxpayer; * * *."

"Sec. 1113(a) Section 3226 of the Revised Statutes, as amended, is reenacted without change, as follows:

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, * * * until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; * * *. *No such suit or proceeding shall be begun* before the expiration of six months from the date of filing of such claim unless the Commissioner renders a decision thereon within that time, nor *after the expiration of five years from the date of the payment of such tax,* * * * *unless* such suit or proceeding is *begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates.* The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail." (Italics supplied)

The facts respecting the claims for refund for the four years mentioned may be summarized as follows: On March 15, 1924, the plaintiff filed its corporate income tax return for the calendar year 1923, reporting $47,548.31 due as income tax for that year. That amount was duly paid, the last instalment being paid December 15, 1924. On December 7, 1927, the Commissioner sent the plaintiff by registered mail a preliminary audit letter proposing an additional tax for 1923 of $176.93 and granting plaintiff 30 days from date within which to file a protest if so advised. On January 20, 1928, the Commissioner received a letter from the plaintiff dated January 10, 1928, and sworn to January 19, 1928, protesting the Commissioner's proposed additional assessment for 1923 and contending that no additional tax was due for that year. Among other things, the plaintiff stated in its letter:

"* * * In view of the fact that protest has been made and submitted to your Department covering the years 1917 to 1919 inclusive and in view of the fact that the question involved in connection with the *year 1923* is included in the protest for those earlier years, the present protest is sent to your office for consideration."

* * * * * *

"The basis on which the taxpayer relies for the elimination of the proposed tax is the failure to allow depreciation on capital asset additions made during the years 1917 to 1922 inclusive. * * *"

The plaintiff also set forth in that letter and accompanying exhibits detailed claims of additions to capital assets for the years 1917 to 1922 inclusive, aggregating $122,-723.40, stating in connection therewith that such additions had been "charged to depreciation reserve account in error." The letter concluded with this phrase, "* * * it will be found that the net income as adjusted is far less than the amount shown in your said letter of December 7, 1927.

On March 14, 1928, the Commissioner sent plaintiff notice of the assessment of a deficiency in its 1923 income tax of $176.93, by registered mail, and advised the plaintiff of its right to appeal to the Board of Tax Appeals within 60 days thereafter. Plaintiff did not appeal; and on May 26, 1928, the Commissioner assessed a deficiency tax of $176.93 and interest of $40.-57, or a total of $217.50, against the plaintiff for 1923, which was paid in full on June 8, 1928. On June 11, 1928, plaintiff filed with the Collector, on Treasury Form 843, a claim for refund of the $217.50 so paid. The grounds in support of this claim were:

"Additional depreciation is allowable on (1) capital assets acquired during the years 1917 to 1922, inclusive, the costs of which was not deducted in the returns for those years and which costs had been improperly charged to depreciation reserve, and (2) on assets still on hand and in use and which the Department claims was fully depreciated although taxpayer has not received the benefit of all of the depreciation on the assets in tax returns."

On July 28, 1928, the Deputy Commissioner informed plaintiff by letter that its claim would be rejected since no data had been submitted in substantiation thereof; and on August 3, 1928, the Commissioner rejected plaintiff's said claim. Four days later plaintiff wrote the Commissioner relative to said rejection as follows:

"It is clear from the contents of the letter and the symbols that that particular division that wrote the letter is not aware of the conference had in Washington with *Messrs. H. A. Neff, Conferee and Gillman Auditor,* at which conference data in substantiation of the claim has been submitted";

and requested that the rejection of the claim be held in abeyance to await the outcome of the mentioned conference. On November 16, 1928, the Commissioner replied to that letter stating in substance that the information furnished at said conference did not substantiate plaintiff's claim and that it was disallowed as he had been previously advised.

The next move of the plaintiff respecting the refund of income taxes paid for 1923 was the filing of another claim, April 25, 1931, on Treasury Form 843, for the refund of the same $217.50 of its 1923 tax "or such greater amount as is legally refundable." For grounds of the claim it was stated, "see sheets attached." The referred to sheets were also filed in support of claims for refunds of taxes paid for the years 1924 to 1928, inclusive. The significant part of the "sheets attached" was a letter, sworn to by the Treasurer of the plaintiff, bearing date April 24, 1931, which was sent to the Collector of Internal Revenue. Of the grounds urged in support of its six claims simultaneously filed only the one entitled *"Depreciation"* relates to 1923 taxes. While the wording of the claim based on depreciation, as filed in 1931, varies from the language used in the claim filed June 11, 1928, the substance is the same; the same basic controversy which was tendered in the plaintiff's claim filed in 1928 was simply reasserted in the claim filed in 1931. On June 26, 1931, the plaintiff sent another sworn to letter to the Collector of Internal Revenue wherein it asserted that the purpose of submitting the claim of April 25, 1931, was to further perfect and amend the original claims for refunds for the years 1923, 1924 and 1925, "by the submission of further facts not heretofore discovered". Therein the plaintiff stated:

"Accounts receivable are inventory and should have been reported and included in the balance sheets at cost or market, whichever is lower";

And that

"All items appearing as assets in the balance sheet are inventory, including accounts receivable."

The plaintiff requested that its claim for refund for each of the years 1923, 1924 and 1925 be reopened "for the reason that certain facts on which the tax was overpaid were not known to it until after the decision of the United States Circuit Court of Appeals was rendered in the case of Henry L. Russell et al. v. Commissioner of Internal Revenue [1 Cir., 45 F.2d 100], decided November 26th, 1930." On July 30, 1931, plaintiff was informed by the Commissioner that its claims for refund for the years 1923 to 1928 "have been considered and will be rejected"; and on October 23, 1931, the Commissioner notified the plaintiff that its claims for refund of taxes for the years 1923 to 1928, inclusive, had been disallowed on that date.

On March 11, 1925, plaintiff filed its income tax return for the calendar year 1924, reporting tax due of $29,563.51, which was paid in four substantially equal instalments, the last one on December 16, 1925. A similar income tax return was filed by the plaintiff for the calendar year 1925 on March 15, 1926, showing a tax due of $34,617.95, which was duly paid in instalments, the last one on December 20, 1926. On January 26, 1929, a waiver or consent extending the period for assessment of any deficiency in plaintiff's taxes for the years 1924 and 1925 until December 31, 1929, was duly executed. On March 15, 1927, plaintiff filed an income tax return for the calendar year 1926, showing $34,343.12 taxes due. This amount was also paid in instalments, the last one on December 22, 1927.

On November 9, 1927, an Internal Revenue Agent submitted a report in which he recommended that plaintiff be assessed deficiencies of $3,233.29, $2,441.14 and $1,927.96, respectively, for the years 1924, 1925 and 1926. Plaintiff was notified of such recommendation and sent a detailed breakdown of the adjustments and recomputations recommended by the Revenue Agent. On May 17, 1928, and again on October 10, 1928, the plaintiff sent the Revenue Agent sworn letters protesting the proposed additional assessments for 1924, 1925 and 1926, and contended therein that plaintiff was entitled to additional allowances of depreciation and that certain deductions as donations had been improperly disallowed, and further that money spent for repairs had been improperly classified as replacements. This was followed by another sworn to letter dated January 10, 1929, addressed to the Commissioner, which was in effect a brief in support of plaintiff's claim of deductions for donations, depreciation and repairs. This letter consists of 21 pages, not counting the page on which the oath appears.

On March 13, 1929, the Commissioner notified the plaintiff by registered mail of his determination of deficiencies in its income taxes for the years 1924, 1925 and 1926, in the respective amounts recommended by the Revenue Agent on November 9, 1927, and further advised the plaintiff of its right to appeal to the Board of Tax Appeals for a redetermination of the proposed deficiencies pursuant to Section 274 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 203. Plaintiff did not appeal.

On May 16, 1929, plaintiff filed, upon Treasury Form 843, a claim for refund of $29,563.51 of its 1924 income taxes, or such greater amount as is legally refundable. The grounds of this claim were:

"(1) Exhaustion, wear and tear and obsolescence was not allowed in amounts actually sustained.

"(2) Deductions for donations were erroneously disallowed.

"(3) Items which should have been allowed as an expense were not allowed and were disallowed.

"(4) And other discrepancies."

On the same date the plaintiff also filed a claim for refund of $34,617.95 of its 1925 taxes. The grounds of this claim were the same as those stated above, except that Item 3 read as follows:

"(3) Items which should have been deducted as an expense were not so deducted and such items as were deducted correctly as an expense were erroneously disallowed as such."

On May 25, 1929, the Commissioner assessed deficiencies against the plaintiff as follows:

For the year 1924, $3,233.29, interest $740.87, total $3,974.16; for the year 1925, $2,441.14, interest $467.83, total $2,908.97; and for the year 1926, $1,927.96, interest $253.80, total $2,181.76. The deficiencies so assessed were paid June 7, 1929. On June 17, 1929, the Commissioner informed the plaintiff by letter that his claims for refund for the years 1924 and 1925 had been rejected, stating that such claims did not conform to the requirements of Treasury Decision 4265, Internal Revenue Bulletin Vol. VIII, No. 13, page 14, in that the information was incomplete. On June 22, 1929, the plaintiff in a letter to the Commissioner protested the rejection of its claims for refunds for the years 1924 and 1925. Among other things, the plaintiff asserted in this letter, as it has in its briefs and otherwise, that it was entitled to depreciate its properties on the basis of its fair market value as of July 1, 1922, when it acquired such properties from its predecessor. On June 28, 1929, the Commissioner rejected in their entirety plaintiff's claims for refunds for the years 1924 and 1925, and the plaintiff was notified of such rejections by letter bearing same date. On June 29, 1929, the Commissioner acknowledged receipt of plaintiff's previous letter of June 22, 1929. Then on February 25, 1930, the Commissioner informed the plaintiff by letter that careful consideration had been given its request to reopen its claims for refunds of $29,563.51 for 1924 and $34,617.95, for 1925, but that a review of the claims disclosed that the issues presented had been previously considered, and plaintiff was notified that its requests for reconsideration had been denied.

In the meantime, on December 2, 1929, plaintiff filed a claim for refund of $658.56, or such greater amount as is legally refundable, of its taxes for 1924; and on the same date another claim for refund of $426.16 of the 1925 taxes, and on the same date still another for the refund of $311.70 of its 1926 taxes. These claims were for deductions stated to be additional State income taxes for the years 1924, 1925 and 1926. On September 6, 1930, the Commissioner notified plaintiff of partial disallowance of said claims, giving as his reason therefor, among others, that the State of South Carolina had not been advised of any additional income tax due by the plaintiff, none had been accrued on plaintiff's books and none had been paid. It was further pointed out that the plaintiff had not acknowledged any such liability to the State and that there was little probability of its doing so. On September 20, 1930, plaintiff wrote the Commissioner objecting to his determinations in regard to plaintiff's claims for refunds for the years 1924, 1925 and 1926, and requested a further adjustment in plaintiff's favor. On January 13, 1931, the Commissioner did allow the plaintiff certain refunds, viz., for 1924, $551.28, with $126.32 interest, total $667.60; for 1925, $342.21, with $65.58 interest, total $407.79; and for 1926, $244.36, with $33.40 interest, total $277.76. The above amounts with additional accrued interests were refunded to the plaintiff on or about February 19, 1931.

The plaintiff's habit of filing multiform claims with the tax authorities continued, and on April 25, 1931, the plaintiff filed with the Collector, on Treasury Form 843, a third claim for a refund of tax in the amount of $3,974.16 for the year 1924, a second claim for refund of tax in the amount of $2,908.97 for the year 1925, and a second claim for a refund of tax in the amount of $2,181.76 for the year 1926. The grounds of these claims were the same as set forth in plaintiff's sworn to letter of April 24, 1931, hereinabove referred to in discussing plaintiff's claim of April 25, 1931, for the refund of $217.50 of its 1923 tax. The plaintiff claimed a deduction of $100 as a donation for each of the years 1924 and 1925 to the Boy Scouts of America, a donation to a Mr. Brown of $100 for political purposes in 1925, and donations of $100 to the Chamber of Commerce and $200 to B. E. Geer for the year 1926. For the same years the plaintiff claimed largely increased deductions for depreciation based in large measure on what the plaintiff asserted to be the costs to it of the properties in 1922 by reason of the aforementioned reorganization. As stated by plaintiff:

"The cost to the taxpayer of the depreciable property thus acquired was the fair market value thereof, as of July 1, 1922, in the amount of $1,804,254.61. The book cost of this said depreciable property as appeared on the books of the Union Bleaching & Finishing Co. was only $1,374,860.99, and was the basis used by the Commissioner for depreciation purposes."

The plaintiff further contended, in support of its claims of April 25, 1931, that the costs of certain properties which had been acquired in and prior to the taxable years should have been charged to expenses instead of to depreciation reserve; (2) that certain of its properties which had been fully depreciated had a remaining useful life and that depreciation should have been continued thereon, since the plaintiff was not the same entity as its predecessor, from which the properties were acquired in the reorganization of 1922; and (3) that the Commissioner had erroneously disallowed as deductions from income the costs of repairs and had erroneously held that such expenditures were renewals or replacements; (4) that expenditures for repairs added nothing to the original value of the properties repaired and were not improvements; and (5) that if the amounts so expended should not be allowed as expenses they should be allowed as additions to the plant, and be made subject to depreciation, etc.

On June 26, 1931, as hereinbefore stated, plaintiff sent a letter to the Collector of Internal Revenue purporting to perfect and amend its claims then on file for refunds for the years 1923, 1924 and 1925.

On March 15, 1928, plaintiff filed its income tax return for the calendar year 1927 reporting as net income $236,091.14

and tax due $31,872.30. This tax was duly paid in instalments, the last one on December 14, 1928. On October 3, 1929, an Internal Revenue Agent recommended an additional assessment against plaintiff for 1927 of $1,305.58, a copy of which recommendation was furnished plaintiff on October 12, 1929. By a sworn to letter dated November 7, 1929, plaintiff protested that certain adjustments should be made in the Revenue Agent's computations which would reduce the amount of the recommended assessment to $1,150.32. The Revenue Agent agreed to plaintiff's proposal and sent plaintiff Treasury Form 870 whereon to consent to the immediate assessment of that amount and requested plaintiff to sign the form and return it. On March 15, 1930, the plaintiff acknowledged receipt of the Internal Revenue Agent's letter, but declined to sign Form 870, stating as its reason that it would prevent plaintiff from "filing a petition with the Board of Tax Appeals." On March 25, 1930, the Revenue Agent submitted a supplemental recommendation that the proposed deficiency for 1927 be reduced to $1,150.31, and a copy of such recommendation was transmitted to plaintiff April 11, 1930. Such deficiency plus $143.98 as interest, making a total of $1294.29, was assessed by the Commissioner on August 13, 1930, and it was paid by plaintiff May 19, 1930. The plaintiff did not appeal to the Board of Tax Appeals.

On September 19, 1930, the Commissioner notified plaintiff of a tentative proposal to assess another deficiency against the plaintiff of $47.93 for the year 1927, and on October 25, 1930, the Commissioner notified the plaintiff by registered mail that he had determined the deficiency as stated. No appeal was taken to the Board of Tax Appeals from this determination, and on January 10, 1931, the Commissioner actually assessed said deficiency with interest thereon of $8.11, making a total of $56.04, all of which was paid or satisfied on January 13, 1931.

On April 25, 1931, the plaintiff filed a claim, on Treasury Form 843, for the refund of $10,000, or such greater amount as is legally refundable, of its 1927 tax, setting forth as grounds therefor the same contentions contained in the above referred to letter of the plaintiff which was sworn to on April 24, 1931. On October 23, 1931, the Commissioner rejected the claim.

On March 14, 1929, plaintiff filed its 1928 income tax return reporting a net income of $140,945.72 and tax due as $16,914.49, which was duly paid in quarterly instalments, the last one on December 14, 1929. On April 16, 1930, the Revenue Agent recommended the assessment of a deficiency tax of $381.49 against the plaintiff for 1928, a copy of which recommendation was furnished plaintiff by letter dated June 2, 1930. Plaintiff not having appealed to the Board of Tax Appeals, the stated amount plus interest of $29.11, making a total of $410.60, was assessed against plaintiff by the Commissioner on August 15, 1930. Said assessment was paid in full July 21, 1930. Plaintiff, on April 25, 1931, filed with the Collector, on Treasury Form 843, a claim for the refund of $10,000 for the year 1928. The grounds of this claim were the same as those referred to in the preceding years, except that the depreciation claimed for 1928 was slightly more than that claimed for the preceding year. On October 23, 1931, the Commissioner rejected the claim.

This brief recapitulation may not be amiss:

(1) On December 15, 1924, the plaintiff paid the last quarterly instalment of its 1923 income tax; on June 8, 1928, the plaintiff paid a deficiency assessment for 1923 of $217.50; on June 11, 1928, plaintiff filed a claim for refund of the assessment so paid, or some greater amount, on the ground of inadequate allowances of depreciation; on August 3, 1928, plaintiff's claim of refund was rejected; and on November 16, 1928, plaintiff's previous request that rejection be held in abeyance pending further consideration was denied.

(2) On April 25, 1931, plaintiff filed a second claim for refund of said deficiency of $217.50, or some greater amount, on the ground that it had been allowed inadequate depreciation, that the payment was barred by statute, and on June 27, 1931, by way of amendment, that its accounts receivable should be valued at cost or market value.

On October 23, 1931, this second claim was rejected.

(3) On December 16, 1925, December 20, 1926, and December 22, 1927, respectively, plaintiff paid the last instalments of its 1924, 1925 and 1926 income taxes. On May 16, 1929, plaintiff filed claims for refund of its 1924 and 1925 taxes, claiming additional deductions for depreciation, donations, repairs and expenses. On May 25, 1929, deficiencies were assessed against the plaintiff for the years 1924, 1925 and 1926, which were paid on June 7, 1929. On June 17, 1925, plaintiff was notified that its claims for refund of 1924 and 1925 taxes would be rejected, and such claims were actually rejected on June 28, 1929.

(4) On December 2, 1929, plaintiff filed claims for refunds of its 1924, 1925 and 1926 taxes, claiming deductions for additional compensation to officers and additional South Carolina income taxes. These were the second claims filed respecting 1924 and 1925 taxes. On January 13, 1931, such claims were disallowed insofar as they related to additional South Carolina taxes but allowed as to additional compensation for officers.

(5) On April 25, 1931, the plaintiff filed claims for refund of 1923 to 1928 taxes. (No jurisdictional issue is raised as to the 1927 and 1928 claims.) As to the other years the grounds of the claims were additional depreciation (the second such claim on all grounds for 1924 and 1925). On June 27, 1931, the claims for the years 1924 and 1925 were amended to include as a ground therefor that plaintiff's accounts receivable should be valued at cost or market value, whichever is lower.

(6) On October 23, 1931, all six claims filed April 25, 1931, were rejected. As hereinbefore stated this action was commenced October 23, 1933.

Applying applicable statutes and Treasury Regulations issued thereunder to the facts of this case, I am of the opinion that plaintiff's claims are barred and that they should be dismissed except as to:

(1) Plaintiff's claim for additional deductions from gross income for the year 1923, based on the cost or market value of its accounts receivable, not exceeding the amount of its 1923 deficiency tax of $217.50 which was paid June 8, 1928.

(2) Plaintiff's claims for additional deductions from its 1924 gross income, based on the cost or market value of its accounts receivable and alleged income tax due South Carolina, not exceeding the unrefunded portion of its 1924 deficiency tax of $3,631.95, which was paid June 7, 1929.

(3) Plaintiff's claims of additional deductions from its 1925 gross income, based upon substantially the same grounds stated in the preceding paragraph, not exceeding the unrefunded portion of its 1925 deficiency tax of $2,566.76, which was paid June 7, 1929.

(4) Plaintiff's claim of deductions from its 1926 gross income of additional depreciation, repairs and contributions, not exceeding the unrefunded portion of its 1926 deficiency tax of $1,904.00, which was paid June 7, 1929.

See United States v. A. S. Kreider Co., 313 U.S. 443, 61 S.Ct. 1007, 85 L.Ed. 1447; United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 523, 58 S.Ct. 320, 82 L.Ed. 405; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; Einson-Freeman Co. v. Corwin, 2 Cir., 112 F.2d 683, Certiorari denied 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 449; 18th Street Leader Stores v. United States, 7 Cir., 142 F.2d 113, Certiorari denied 323 U.S. 725, 65 S.Ct. 61, 89 L.Ed. 583.

I do not agree that United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619, is controlling in the instant case. The applicable rule is stated in the more recent Andrews and Garbutt cases, supra. In the Andrews case at page 524, of 302 U.S., at page 319 of 58 S.Ct., 82 L.Ed. 398, it is said:

"* * * a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim."

In the Garbutt case, at page 535 of 302 U.S., at page 323 of 58 S.Ct., 82 L.Ed. 405:

"The statement filed after the period for filing claims had expired was not a permissible amendment of the original claim presented. It was a new claim untimely filed and the Commissioner was without power, under the statute, to consider it".

And, in the Einson-Freeman case, 2 Cir., 112 F.2d at page 684:

"The thought that the period may be extended or the running of the time interrupted by filing a second claim for refund based on one of the grounds covered by the first claim and already disallowed cannot be countenanced. Such a result would put it in the power of a taxpayer to enlarge the time set by statute for commencing suit and would be a departure from settled rules applicable to statutes of limitations. If a person has a cause of action which accrues on demand, he may not prolong the period for bringing suit by making a second or a third demand."

Adverting to the plea of res judicata, and for the sake of clarity I restate my holding that the plea is good and that plaintiff's claims are barred to the extent that they are grounded upon the alleged right of the plaintiff to depreciate its properties on bases and rates materially different from the ones held to be correct in the two Union Bleachery cases hereinbefore cited and discussed.

All issues not disposed of herein are reserved for further consideration. Upon presentation, an appropriate order will be signed giving effect to the findings and conclusions herein expressed.