EMERY KINKEAD, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 66515. Filed October 28, 1960.

*J. Bernard Brown, Esq.,* and *D. Paul Alagia, Jr., Esq.,* for the
petitioner.

*Bart A. Brown, Jr., Esq.,* for the respondent.

BRUCE, *Judge:* This proceeding involves deficiencies in income tax
for the years and in the amounts as follows:

| Year | Deficiency |
|------|-----------|
| 1951 | $3, 655. 60 |
| 1952 | 2, 066. 56 |
| 1953 | 93. 87 |

The sole issue is whether compensation for services rendered by peti-
tioner, an accrual basis taxpayer, during the calendar years 1951, 1952,
and 1953, but not determined until February 29, 1952, February 28,
1953, and February 28, 1954, respectively, or shortly thereafter, was
accruable in the years when the services were rendered. Other issues
have been agreed to by the parties in the stipulation and shall be
given effect under the Rule 50 computation.

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by
this reference.

Petitioner was incorporated under the laws of the Commonwealth
of Kentucky on November 21, 1932, for the purpose of purchasing,
acquiring, leasing, selling, mortgaging, and trading in real estate
and improvements, building homes, apartment houses, and developing
housing projects, subdivisions, and transacting real estate business
of every kind and description. Petitioner's principal place of busi-
ness is at 614 East Broadway, Louisville, Kentucky. During the
years 1951, 1952, and 1953 petitioner regularly kept its records and
reported its income for Federal income tax purposes on the basis of
an accrual method of accounting and it filed its Federal income tax

returns on a calendar year basis for the taxable years 1951, 1952, and 1953 with the district director of internal revenue, Louisville, Kentucky.

During the years 1951, 1952, and 1953 the capital stock of petitioner consisted of 1,500 shares of common stock of a par value of $10 per share which was held as follows:

| Shareholder | Number of shares |
| --- | --- |
| Emery Kinkead | 1,406 |
| Mary S. Kinkead (Mother of Emery) | 94 |

During the period January 1, 1951, through February 28, 1954, Emery Kinkead was president of petitioner.

Homestead Development Co., hereinafter called Homestead, was incorporated under the laws of the Commonwealth of Kentucky on January 23, 1950, for the purpose of engaging in the construction of homes, dwellings, and apartment houses, developing housing projects, subdivisions, and other real estate developments, and transacting business in real estate of every kind and character. During the years 1951, 1952, and 1953 the capital stock of Homestead consisted of 10 shares of common stock of a par value of $100 per share which was held as follows:

| Shareholder | Number of shares |
| --- | --- |
| Emery Kinkead | 8 |
| Mary S. Kinkead | 1 |
| J. Clay Murphey | 1 |

During the period March 1, 1951, through February 28, 1954, Emery Kinkead was president of Homestead.

During the period involved herein, Homestead kept its records and reported its income for Federal income tax purposes on the basis of an accrual method of accounting. Homestead filed its income tax returns on a fiscal year basis for the taxable years ended February 29, 1952, February 28, 1953, and February 28, 1954.

Petitioner occupies and operates a building at 614 East Broadway, Louisville, Kentucky, for the conduct of its business including offices for sales, executive, accounting, architectural, and real estate management departments and these facilities and personnel are furnished and made available to other corporations, including Homestead, which, in turn, pay a service fee to petitioner for the facilities and personnel made available to them.

At the time Homestead was incorporated, it was arranged that petitioner would render certain services and provide certain facilities necessary for Homestead's operation in exchange for which Homestead would pay petitioner an annual service fee based on what was fair and reasonable for the services rendered and facilities furnished to Homestead in each of its fiscal years. It was agreed that the

amount of the annual service fee would be fixed by Emery Kinkead, in his capacity as president of Homestead, at the close of each fiscal year of Homestead or as soon thereafter as possible.'

During the fiscal years of Homestead ended February 29, 1952, February 28, 1953, and February 28, 1954, petitioner rendered services and furnished facilities and personnel to Homestead. The service fee paid by Homestead to petitioner for each of these fiscal years was based on a percentage of the cost of construction completed and sold by Homestead during each of these fiscal years. The service fee rate for each year was determined solely by Emery Kinkead at the end of Homestead's fiscal year or shortly thereafter. According to the books and records of Homestead, the cost of construction sold by Homestead, the rate and the amount of the service fee paid by Homestead to petitioner for each of these years are as follows:

| Fiscal year ended— | Cost of construction sold | Service fee rate | Service fee |
|---|---|---|---|
| | | (per cent) | |
| Feb. 29, 1952 | $207,096.08 | 8 | $16,567.69 |
| Feb. 28, 1953 | 260,201.40 | 6 | 15,612.08 |
| Feb. 28, 1954 | 429,726.54 | 5 | 21,486.33 |

The amounts of $16,567.69, $15,612.08, and $21,486.33 were paid to petitioner by Homestead on or shortly after the close of Homestead's fiscal years ended February 29, 1952, February 28, 1953, and February 28, 1954, respectively, and were reported by petitioner as income for Federal income tax purposes on its Federal income tax returns for its calendar years 1952, 1953, and 1954, respectively.

The accounting books and records of Homestead for its fiscal years ended February 29, 1952, February 28, 1953, and February 28, 1954, were kept by employees of petitioner. This was one of the services rendered by petitioner to Homestead during these years.

Respondent has determined that for the taxable years 1951, 1952, and 1953, petitioner should accrue as income amounts due it from Homestead for services rendered by it for such calendar years, and, therefore, its taxable income for Federal income tax purposes should be adjusted as follows:

| | 1951 | 1952 | 1953 |
|---|---|---|---|
| Amount of service charge income held to be accruable | $13,806.41 | $13,010.07 | $17,905.28 |
| Amount of service charge income reported which is held to be accruable in prior years | | (13,806.41) | (13,010.07) |
| Net adjustment | 13,806.41 | (796.34) | 4,895.21 |

OPINION.

Respondent seeks to include in petitioner's income for the calendar years 1951, 1952, and 1953 compensation for services rendered during

those years, the amount of which was never determined by the contracting parties, which computed the fee for Homestead's fiscal years only. The issue involved concerns a question of accounting, the disposition of which is controlled by sections 41 [1] and 42,[2] I.R.C. 1939.

The applicable principles were stated by this Court in *San Francisco Stevedoring Co.*, 8 T.C. 222, 225:

> A taxpayer, using an accrual method of accounting, must accrue an item in the year in which the taxpayer acquires a fixed and unconditional right to receive the amount, even though actual payment is to be deferred. There must be no contingency or unreasonable uncertainty qualifying the payment or receipt. Income does not accrue to a taxpayer using an accrual method until there arises in him a fixed or unconditional right to receive it. *United States* v. *Anderson*, 269 U.S. 422; *Continental Tie & Lumber Co.* v. *United States*, 286 U.S. 290; *Spring City Foundry Co.* v. *Commissioner*, 292 U.S. 182; [further citations omitted].

See also *Cappel House Furnishing Co.* v. *United States*, 244 F. 2d 525, 529 (C.A. 6, 1957) where the Court of Appeals for the Sixth Circuit said:

> The general rule is that when there is no contest over liability and its measure does not depend upon future events or contingencies, income accrues after liability becomes fixed, although the exact amount may not be determined until later. [Citations omitted.]

In our view petitioner's right to receive the amounts of income which respondent seeks to include in its income for the taxable years 1951, 1952, and 1953 was not fixed and unconditional. Even though the existence of a liability is not contested, the measure thereof does depend here upon future events and contingencies.

Compensation for the services and facilities which petitioner, an accrual and calendar basis taxpayer, provided to Homestead during the years 1951, 1952, and 1953, under the understanding which existed between the petitioner and Homestead, was not for each calendar year but was for and not determined until the end of Homestead's fiscal years ended February 29, 1952, February 28, 1953, and February 28, 1954. At the end of each of the said fiscal years, Emery Kinkead, the president and controlling stockholder of both corporations, would, in his capacity as president of Homestead, determine a fair and

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income.   * * *

[2] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

(a) GENERAL RULE.—The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period.   * * *

reasonable value for the services rendered during Homestead's fiscal year. This determination was not made until Homestead's books were closed. The service fee was ascertained by taking a percentage of Homestead's total cost of construction completed and sold during its fiscal year. The precise percentage or rate to be applied was not determined until the end of Homestead's fiscal year. It was fixed by and at the discretion of Emery Kinkead on the basis, generally, of the volume of construction completed and sold. In fact, for Homestead's fiscal years ended February 29, 1952, February 28, 1953, and February 28, 1954, the applicable percentages decreased from 8 per cent to 6 per cent to 5 per cent, resulting in service fees to petitioner of $16,567.69, $15,612.08, and $21,486.33.

Thus, it is clear that under the agreement between petitioner and Homestead the service fees were not fixed or determinable and the basis for their computation was not unchangeable until the end of Homestead's fiscal year. We hold that the compensation for services rendered by petitioner during the calendar years 1951, 1952, and 1953, but not determined until the end of February 1952, 1953, and 1954, respectively, or shortly thereafter, was not accruable in the years when the services were rendered as determined by respondent. Accordingly, respondent's determination is not sustained.

*Decision will be entered under Rule 50.*