HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* WILLIAM FLACCUS OAK LEATHER CO.

No. 627. Argued April 3, 1941.—Decided April 28, 1941.

*Mr. J. Louis Monarch,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Lee A. Jackson* were on the brief, for petitioner.

*Mr. John A. McCann* for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

In September, 1935, respondent's plant was destroyed by fire. Later that year it received $73,132.50 from an insurance company as compensation for the loss of buildings, machinery, and equipment. The buildings, machinery, and equipment had been fully depreciated for income tax purposes prior to 1935, and no part of the insurance proceeds was used to acquire other property similar or related in service or use to the property destroyed, or to acquire control of a corporation owning such property, or to establish a fund to replace the property destroyed.

In its return for 1935, respondent reported the insurance proceeds as capital gain and added to that amount a gain, not in issue here, of $862.50 from sales of securities. During that same year, respondent had capital losses, also not in dispute, of $76,767.62 which it used to offset completely the total reported capital gains of $73,995. This left an excess of capital losses over capital gains of $2,772.62, and respondent deducted $2,000 of that amount from ordinary income.

The Commissioner held that the insurance proceeds were ordinary income rather than capital gain. Accordingly, he decreased respondent's capital gain and increased its ordinary income by $73,132.50, and allowed respondent capital losses of only $2,862.50, an amount equal to the gain from security sales plus $2,000. The Board of Tax Appeals affirmed in a memorandum opinion on the authority of Estate of Herder, 36 B. T. A. 934.

The Circuit Court of Appeals reversed. 114 F. 2d 783. We granted certiorari, 312 U. S. 671, because the decision below was in conflict with *Herder* v. *Helvering*, 70 App. D. C. 287; 106 F. 2d 153.

It is conceded that respondent's losses resulted from sales or exchanges of capital assets. It is also conceded that the entire amount received from the insurance company must be included in respondent's income since the property had been fully depreciated for income tax purposes prior to 1935. Respondent contends, however, that that amount may be reported as capital gain, in order that capital losses may absorb it, rather than as an item of ordinary gross income.

Section 117 (d) of the Revenue Act of 1934 (48 Stat. 680) provides in part: "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges." Thus, the single question is whether the amount respondent received from the insurance company derived from the "sale or exchange" of a capital asset.

Generally speaking, the language in the Revenue Act, just as in any statute, is to be given its ordinary meaning, and the words "sale" and "exchange" are not to be read any differently. Compare *Helvering* v. *Hammel*, 311 U. S. 504; *Fairbanks* v. *United States*, 306 U. S. 436; *Burnet* v. *Harmel*, 287 U. S. 103. Neither term is appropriate to characterize the demolition of property and subsequent compensation for its loss by an insurance company. Plainly that pair of events was not a sale. Nor can they be regarded as an exchange, for "exchange," as used in § 117 (d), implies reciprocal transfers of capital assets, not a single transfer to compensate for the destruction of the transferee's asset.

The fact that § 112 (f) characterizes destruction of property and indemnification for its loss as an involuntary conversion does not establish that the two events constituted a sale or exchange. That section provides: "If

property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended."

We can find nothing in this language or in other sections of the Act which indicates, either expressly or by implication, that Congress intended to classify as "sales or exchanges" the involuntary conversions enumerated in § 112 (f). It is true that § 111 (c) says that "in the case of a sale or exchange, the extent to which the gain or loss . . . shall be recognized . . . shall be determined under the provisions of section 112." It is also true that § 112 (f) follows § 112 (a) which provides that "upon the sale or exchange of property the entire amount of the gain or loss . . . shall be recognized, except as hereinafter provided in this section."

The inference, drawn from the juxtaposition and cross referencing of these three sections, that the involuntary conversion of respondent's property is thus implicitly characterized as a sale or exchange ignores the fact that in the same Act Congress has chosen a particular method for classifying as sales or exchanges transactions which would not ordinarily be described by one of those terms. Thus § 115. (c) provides: "Amounts distributed in complete liquidation of a corporation shall be treated as in

full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock."

Section 117 (e) provides: "For the purposes of this title gains or losses from short sales of property shall be considered as gains or losses from sales or exchanges of capital assets; and gains or losses attributable to the failure to exercise privileges or options to buy or sell property shall be considered as gains or losses from sales or exchanges of capital assets held for one year or less." See H. Rep. No. 704, 73d Cong., 2d Sess., p. 31; H. Rep. No. 1385, 73d Cong., 2d Sess., p. 23. Section 117 (f) provides: "For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation . . . with interest coupons or in registered form, shall be considered as amounts received in exchange therefor." See *McClain* v. *Commissioner,* 311 U. S. 527; *Fairbanks* v. *United States, supra;* H. Rep. No. 704, 73d Cong., 2d Sess., p. 31.

These sections demonstrate that Congress has expressly specified the ambiguous transactions which are to be regarded as sales or exchanges for income tax purposes. They are convincing evidence that the involuntary conversion of respondent's property, which bears far less resemblance to a sale or exchange than the transactions embraced in §§ 115 (c), 117 (e), and 117 (f), is not to be placed in one or the other of those categories by implication. The prompt withdrawal of Article 113 (a) (9) (1) of Treasury Regulations No. 86 (see T. D. 4698, XV–2 Cum. Bull. 159) indicates that the administrators charged with the enforcement of § 112 (f) reached a similar conclusion. Compare *Burnet* v. *Chicago Portrait Co.,* 285 U. S. 1, 16.

The judgment of the Circuit Court of Appeals is

*Reversed.*