The **CAPPEL HOUSE FURNISHING COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 12979.

United States Court of Appeals
Sixth Circuit.
May 20, 1957.

Hugh E. Wall, Jr., Dayton, Ohio (Iddings, Jeffrey & Donnelly, Dayton, Ohio, Coolidge, Wall & Wood, Dayton, Ohio, on the brief), for appellant.

Melvin L. Lebow, Washington, D. C. (Charles K. Rice, Lee A. Jackson, and Hilbert P. Zarky, Washington, D. C., Hugh K. Martin and James E. Rambo, U. S. Attys., Dayton, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The appeal is from a judgment denying the appellant's claim for a refund of corporate excess profit taxes and involves the interpretation and application of statutes dealing with the accrual method of computation and special statutory provisions for the computation of tax liability on installment sales. The case was tried to the court without a jury, submitted upon pleadings, stipulations, evidence and briefs and from a judgment dismissing the complaint the taxpayer brought this appeal.

The appellant is a corporation of the state of Ohio, operating a retail furniture establishment in Springfield. On May 23, 1945, its leased building and its stock of merchandise therein contained were substantially damaged by fire. The building lessor was diligent in the repair of the premises and the appellant rented warehouse space for a new stock of merchandise so that its operations could immediately be resumed upon the building's renovation. Nevertheless, one hundred thirty six days elapsed before, on October 8, 1945, its business could be reactivated. The appellant carried business interruption insurance in five different companies in the total amount of $51,500.00, all written through the same broker and each policy containing the following provision:

"The measure of recovery in the event of loss hereunder shall be the reduction in 'gross earnings' directly resulting from such interruption of business. * * * For the purpose of this insurance, 'gross earnings' are defined as total net sales less cost of merchandise sold, plus other earnings derived from the operation of the business. In determining 'gross earnings' due consideration shall be given to the experience of the business before the fire and the probable experience thereafter."

The appellant's accountant completed an audit for the fiscal year ending September 30, 1945, late in November, 1945, and on December 12th submitted a preliminary computation of lost gross earnings of $50,919.78 to the local adjuster for the insurers. Because these preliminary proofs were somewhat in excess of the adjuster's original estimate, the companies sent an expert in 'use and occupancy' claims to investigate and after he had submitted his preliminary report negotiations ensued which resulted in a settlement on March 16, 1946, in the amount of $43,176.21. Formal proofs of loss were then made and the respective insurers paid the claims, completing payment on March 27, 1946.

The appellant kept its books upon an accrual basis. It made most of its sales, however, on the installment plan, and reported its income on installment sales, under the provisions of Sec. 44 of the Internal Revenue Code of 1939, 26 U.S. C.A. § 44 and Regulations 111, Sec. 29.-44–1. Sec. 44(a) provides:

"(a) *Dealers in personal property.* Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized, or to be realized when payment is completed, bears to the total contract price."

Pursuant to the authority of Sec. 44 (a), the Commissioner of Internal Revenue promulgated Regulations 111, Sec. 29.44–1 which, so far as here pertinent, provides:

"* * * The general rule prescribed is that a person who sells or otherwise disposes of personal property on the installment plan, whether or not title remains in the vendor until the property is fully paid for, may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total or gross profit (i. e., sales less cost of goods sold) realized or to be realized when the property is paid for, bears to the total contract price.

Thus, the income of a dealer in personal property on the installment plan may be ascertained by taking as income that proportion of the total payments received in the taxable year from installment sales (such payments being allocated to the year against the sales of which they apply) which the total or gross profit realized or to be realized on the total installment sales made during each year bears to the total contract price of all such sales made during that respective year. * * * "

It will be noted that while the fire occurred during the fiscal year ending September 30, 1945, the appellant received payment for the loss in the fiscal year ending September 30, 1946. The appellant reported the entire proceeds in the year of their receipt, relying upon Regulations 111, Sec. 29.112(f)–1, contending that the insurance proceeds stood in place of installment payment receipts and that they should, therefore, be reported in the year received. That Section provides:

"The proceeds from use and occupancy insurance contract which by its terms insured against actual loss sustained of net profits in business, are not proceeds of an involuntary conversion, but are income in the same manner that the profits for which they are substituted would have been."

The Commissioner of Internal Revenue assessed a deficiency against the appellant by adjusting its income and tax thereon for the two fiscal years in question on the basis that 130/136ths of the avails of the insurance policies should have been returned as income during the fiscal year ending September 30, 1945, because accrued in that fiscal year, and that only 6/136ths should have been returned as income in the fiscal year ending September 30, 1946, because accrued in that fiscal year. The district court agreed on the ground that the right to receive income, and not its actual receipt, determines the gross income of a taxpayer under the accrual method of accounting, in reliance upon Spring City

Foundry Co. v. Commissioner, 292 U.S. 182, 184, 54 S.Ct. 644, 78 L.Ed. 1200. This principle the court found applicable to the present case because the insurance policies provided that the measure of recovery, in the event of loss, shall be the reduction in gross earnings directly resulting from interruption of business less charges and expenses which do not necessarily continue during such interruption. It reasoned that business interruption insurance is designed to pay the insured the amount of profits that he would have earned had there been no interruption and that although the appellant's profits were generally derived from sales on the installment plan, the insurance is to protect the insured against loss of profits and not loss of sales. It is the loss of such profits for which the insurance money is substituted and not substituted for sales that the appellant would have but which were not made, calculated on the basis of past experience prorated over the time that business was interrupted. It, therefore, concluded that prorating in such manner the distribution made by the Commissioner was correct. It held that the liability of the insurance companies became fixed at the time of the fire, even though the amount of the loss had not then been ascertained, and the companies had not denied liability under the policies. While they had examined the records of the business for the three months after resumption of operations, the increase of business in such months were not caused by the recapture of sales lost during its interruption but were due to an upturn of business. No case had been found involving interruption of business where the installment sales formula had been superimposed upon the accrual method of accounting. If installment sales were not involved, there would have been no question as to the accuracy of the Commissioner's determination, for in such case the gross income in question would have been due to insurance in lieu of profits for the period of interruption and could not have been considered money derived from sales. It, therefore, found

that the appellant could not recover and its complaint was dismissed.

We have, therefore, the question whether, under Sec. 44, a dealer in personal property, on the installment basis, may return in the year of their receipt the proceeds of "use and occupancy" insurance, compensating it for loss of gross earnings that would otherwise have arisen from installment sales during a period of business interuption and an alternative contention by the appellant that if such proceeds may not be returned on the installment basis, applying accrual theory, whether the appellant had a sufficient basis upon which it could approximate an amount due, assuming that the liability of the insurers, though not yet determined as to amount, was not denied or contested.

 Section 44(a) is silent about insurance proceeds. They do not constitute a sale of property. Herder v. Helvering, 70 App.D.C. 287, 106 F.2d 153, 1160; Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310. It was said in Commissioner of Internal Revenue v. Freihofer, 3 Cir., 102 F.2d 787, 790, 125 A.L.R. 761:

> "Where the word [sale] is used, in the absence of anything to the contrary, it will be assumed that the word is intended to have its usual signification. De Ganay v. Lederer, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042; State v. Colonial Club, 154 N.C. 177, 69 S.E. 771, 31 L.R.A., N.S., 387, Ann.Cas.1912A, 1079."

Moreover, even if the proceeds of the insurance policies could be considered as constituting a sale or standing in the place of sales, they would still not be sales on the installment plan, within the language of Sec. 44(a). It is, of course, a well known principle of construction, in tax cases, that doubts are to be resolved in favor of the taxpayer but this principle is not applicable where a privilege or exemption is involved. Bank of Commerce v. State of Tennessee for use of Memphis, 161 U.S. 134, 16 S.Ct. 456, 40 L.Ed. 645; Franciscus Realty Company v. Commissioner, 8 Cir., 39 F.2d 583. The legislative history of Sec. 44 makes it clear, even if it were not otherwise obvious, that the relief intended by Congress was to avoid compelling dealers in personal property to pay taxes on large accruals of installment sales when they had received only nominal payments with the receipt of the balance of the contract price deferred to subsequent months or years. Here, the proceeds of the policies were received in cash from the various insurers as soon as proofs of loss were made, and there is absent the type of hardship sought to be relieved against by Congress. Such proceeds may not be equated with sales, since there were no sales and no possibility of applying the installment formula, and Regulations 111, Sec. 29.112(f)-1 speaks only in terms of tax liability without reference to the time when liability becomes fixed.

We come then to the alternative ground for reversal presented by the appellant and this depends upon whether on the accrual basis the appellant could reasonably approximate the amount due to it during the fiscal year ending September 30, 1945. The appellant urges that during that fiscal year it had no reasonable basis for determining its loss because it did not complete its annual audit and preliminary computation of its lost gross earnings until late into the next fiscal year; that, as late as March 6, 1946, the insurers were concerned with the possibility that the appellant's spurt of business, after resuming operations, might constitute a recapture of sales lost rather than an increase of business due to the post-war boom. It contends also that the insurers never admitted liability on the policies but recognized only a contingent liability.

 The general rule is that when there is no contest over liability and its measure does not depend upon future events or contingencies, income accrues after liability becomes fixed, although the exact amount may not be determined until later. Helvering v. St. Louis, Southwestern Railway Company, 8 Cir., 66 F.2d 633; Continental Tie & Lumber

Company v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111; Franklin County Distilling Company, Inc., v. Commissioner, 6 Cir., 125 F.2d 800; Patrick McGuirl v. Commissioner, 2 Cir., 74 F. 2d 729. As said by Hutcheson, J., in Frost Lumber Industries v. Commissioner, 5 Cir., 128 F.2d 693, 694:

: "[W]here the taxpayer's books are kept on an accrual basis, where the amount is reasonably certain in fact and determinable in amount; it may be treated as a gain or loss even though the exact amount may not have been precisely ascertained [citing cases], * * * if the basis for the computation is unchangeable and though the exact amount may be unknown, if it is not unknowable, the item * * * is to be treated, for tax purposes, as accrued income."

The crucial question is whether the appellant's right to receive the proceeds became fixed as of the time of the fire. The wording of the policy suggests that it did:

"In determining 'gross earnings,' due consideration shall be given to the experience of the business before the fire and the probable experience thereafter."

█ The word "probable" makes subsequent experience a matter for estimate in advance, not something to be examined before claims can be settled; and the fact that the insurers here had an opportunity to examine the company's records for three months of the next fiscal year was due to the delay of the insured in presenting its claim. The district court was of the view that this was a testing of the results obtained rather than a method of determining loss. The appellant would have been within its rights under the contract in demanding settlement of its claim upon past experience, supplemented by an estimate of future experience, and this was, likewise, the view of the District Court. The appellant also contends that there was no admission of liability on the part of the insurers, and that because their right of recovery was in contest, there should be no accrual. While it is true that there was no unequivocal admission of liability by the insurers, the record clearly demonstrates that the concern of the insurers was not with the question of liability but with its measure. There was no suggestion whatever of any infirmity in the contracts or any other ground for disputing liability and, so, we are of the view that the finding of the district court, that they had never disputed their liability, was a reasonable inference, supported by the facts of record and is not clearly erroneous.

█ The fact that payment was received in a subsequent fiscal year does not affect the accrual problem. Franklin County Distilling Co., Inc., v. Commissioner, supra; Spring City Foundry Co. v. Commissioner, supra. As we said in Ohmer Register Company v. Commissioner, 6 Cir., 131 F.2d 682, 686, 143 A.L.R. 1164:

"* * * The essence of the accrual method of keeping accounts and making returns is that the right to receive and not the actual receipt determines whether an amount should be included in gross income. The right accrues when the right to receive the amount becomes fixed * * *."

Nor, is a different result to be compelled by the fact that the appellant delayed until the succeeding fiscal year to compute his lost gross earnings and present his claim. Keller-Dorian Corp. v. Commissioner, 2 Cir., 153 F.2d 1006. The appellant had in its own books and accounts sufficient data to form a basis for approximating the amount due and, since it was not required by the terms of the policy to test its calculations by actual experience after resumption of its business, its contention that there should be no accrual is rejected. Continental Tie and Lumber Company v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111.

Because we are convinced that Sec. 44(a) is a relief measure designed to protect a specific taxpayer against manifest unfairness, it must be strictly con-

strued and applied literally to specific circumstances, and that the taxpayer must bring itself within the clear recital of its terms, and because the facts reasonably sustain an inference that the insurers did not dispute liability, and that the measure of liability could be approximately determined by the taxpayer as of the date of the fire, and because income under the accrual basis must be returned when the loss occurs if at such time the measure of the loss is reasonably capable of ascertainment, and that it is the nature of business interruption insurance, not unrecognized by the terms of the contracts, reasonably construed, which requires a prorating of the loss over the period of interruption, the judgment of the district court should be and it is

Affirmed.