Beatrice W. **OPPENHEIMER,** Petitioner,

v.

**DISTRICT OF COLUMBIA,** Respondent.

No. 18639.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 19, 1965.

Decided June 17, 1966.

Petition for Rehearing En Banc Denied Aug. 17, 1966.

———◆———

Mr. Gilbert Hahn, Jr., Washington, D. C., for petitioner.

Mr. Henry E. Wixon, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Milton D. Korman, Acting Corporation Counsel, and Donald T. Fish, Asst. Corporation Counsel at the time the brief was filed, were on the brief, for respondent.

Before DANAHER, WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

There are a number of anomalies inherent in residence in the District of Columbia, but none is more striking than that of being simultaneously subjected to differing schemes of income taxation devised by the same legislature. The resulting confusion plagues taxpayer, tax collector, and court alike. This review of a decision of the District of Columbia Tax Court does not lessen the problem, nor is anything likely to do so short of a Congressional determination that one income tax structure at a time is enough for any legislative body to erect for those under its jurisdiction. In this case we divine, albeit with Congressional illumination of a very faint order indeed, that affirmance of the decision appealed from is most consonant with the legislative purpose.

I

The present controversy is over deficiencies in income tax asserted against petitioner for the calendar years 1960 and 1961. The deficiencies in each case result from a disallowance of claimed deductions for depreciation of real properties originally acquired by petitioner as a distribution in complete liquidation of a corporation in which she had owned stock for a number of years. The question turns upon what valuation, for purposes of future depreciability, petitioner was entitled to assign to these properties when they came into her direct ownership.

The dissolution of the former corporate owner of the properties occurred in 1953. At that time petitioner's capital investment in the shares held by her was $49,912.62; and the earned surplus on the corporation's books allocable to her shares was $135,248.75. She received in liquidation assets then valued at $842,-513.95, which assets included the real properties in question. The valuation of these latter reflected $657,352.28 in unrealized appreciation over their cost to the corporation. These properties have since been operated by petitioner as an unincorporated business. In petitioner's franchise tax returns for 1953 through 1961, petitioner has taken each year a depreciation deduction founded upon the assumption that the depreciation base of the real properties in her hands was their fair market value (which necessarily includes the unrealized appreciation) on the day they were distributed to her in liquidation.

These deductions in respect of 1953 through 1959 totalled $421,663.61. Those years are not in issue here, because it was not until 1960 that the assessing authorities first challenged petitioner's assumption. They then took the position that the proper depreciation base for these properties could not exceed the total of the petitioner's interest in the earned surplus account ($135,248.75). Since this amount had already been more than exhausted by the deductions taken by petitioner for 1953 through 1959, no allowance for 1960 and 1961 was permitted.

The District of Columbia Tax Court sustained this result. It did enlarge the depreciation base by the addition of the $49,912.62 representing petitioner's interest in the capital account at the time of dissolution, but even this revised figure fell substantially below the total of the

depreciation deductions taken by petitioner in the earlier years. In this court, the District of Columbia has accepted the propriety of this revision but, as indicated above, whether it is the one or the other does not affect the outcome of this case.

This is not the first time petitioner has been before this court in a tax controversy stemming from the corporate dissolution and liquidation involved here. The District contended earlier that petitioner's taxable income for 1953 included the difference between the cost to her of her stock and the market value of the properties received by her in liquidation. This difference was claimed by the District to be a "dividend" within the meaning of 47 D.C.Code § 1551c(m).[1] However, this court concurred with the Tax Court in rejecting this claim. District of Columbia v. Oppenheimer, 112 U.S. App.D.C. 239, 301 F.2d 563 (1962). We noted that an unrealized appreciation in a corporation's assets could not be regarded as a part of its earned surplus; and we reminded that we have held the dividend distributions taxable under § 1551c(m) to be limited to those attributable to earned surplus. See Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied, 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958). Thus it was that petitioner was held to

have received in 1953 taxable income by reason of the liquidation only in the amount of the earned surplus of $135,-248.75.

The Tax Court was of the view in the instant proceeding that Congress could not have intended that petitioner acquire, by virtue of a corporate liquidation, a stepped-up depreciation base largely comprised of an untaxed, because unrealized, rise in market value. Petitioner's argument essentially is that it is not for the Tax Court to attribute a purpose to Congress at odds with the plain words used by it. It is because we do not find those words quite so compelling as does petitioner that we leave undisturbed the deficiencies asserted by the District in respect of the 1960 and 1961 returns.

## II

The statutory point of departure is the clear purpose on the part of Congress to allow a deduction from gross income of a "reasonable allowance for exhaustion, wear, and tear of property used in the trade or business * * *." 47 D.C. Code § 1557b(a) (7). This section does not further define the allowances permissible under it. It says rather that the "basis upon which such allowances are to be computed is the basis provided for in" Section 1583e, which, as shown in the margin,[2] sets up four categories for

---

1. "(m) The word 'dividend' means any distribution made by a corporation (domestic or foreign) to its stockholders or members, out of its earnings, profits, or surplus (other than paid-in surplus), whenever earned by the corporation and whether made in cash or any other property (other than stock of the same class in the corporation if the recipient of such stock dividend has neither received nor exercised an option to receive such dividend in cash or in property other than stock instead of stock) and whether distributed prior to, during, upon, or after liquidation or dissolution of the corporation: *Provided, however,* That in the case of any dividend which is distributed other than in cash or stock in the same class in the corporation and not exempted from tax under this subchapter, the basis of tax to the recipient thereof shall be the market value of such property at the time of such distribution * * *."

2. "*Depreciation.*—The bases used in determining the amount allowable as a deduction from gross income under the provisions of section 47–1557b(a) (7) shall be—

   (a) where the property was acquired after December 31, 1938, by purchase, the basis shall be the cost thereof to the taxpayer;

   (b) where the property was received in exchange for other property after December 31, 1938, the basis shall be the market value thereof at the time of such exchange;

   (c) where the property was inherited or acquired by gift after December 31, 1938, the basis shall be that defined in subsection 47–1583(b) (3);

   (d) if the property was acquired prior to January 1, 1939, the appropriate basis set forth in subsection (a), (b), or (c) of this section shall be used: *Provided, however,* That the taxpayer may, at his

the determination of basis for depreciation allowances. It is the second of these to which petitioner points as justifying her use of market value at the time of liquidation. She urges that the transaction by which she became the owner of the real properties was an "exchange" of her shares of stock for such properties, entitling her to the depreciation base of current market value.

■ In classic corporate theory, however, uncomplicated by tax considerations, the liquidating distribution by a dissolved corporation of its assets to its shareholders does not partake of the nature of a bargained sale or exchange. One of the rights of a stockholder is to share in the distribution of the assets of a corporation as and when it goes out of existence. His shares are turned in for extinction, and he takes as of right his proportion of the assets formerly owned by the corporation. See First National Bank of Boston v. State of Maine, 284 U.S. 312, 330, 52 S.Ct. 174, 76 L.Ed. 313 (1932).

When Congress addressed itself to the problem of fitting corporation liquidations into its scheme of capital gains taxation for federal taxpayers generally, it thought it necessary to say that distributions in liquidation *"shall be treated as* payments in exchange for stock or shares * * *"* (Emphasis supplied).[3] In the income tax statute made applicable to the District of Columbia—so vastly different as it is in its approach to capital gains taxation—Congress has made no similar provision. We are, thus, under no compulsion to hold that a transaction which Congress has found it necessary to say "shall be treated as" an exchange in one context must be taken to be one in another.

In *Berliner, supra,* it was argued to this court that a distribution in corporate liquidation should not be included in taxable income because it represented "gains from the sale or exchange of [a] capital asset" within the meaning of Section 1551c(*l*), and was therefore exempt from taxation by reason of Section 1557a(b)(11). We rejected that contention, noting that, at least for purposes of inclusion in taxable income, Congress had, in Section 1551c(m), made express provision for distributions in corporate liquidation. Although Congress has, to put it mildly, been appreciably less precise in addressing itself to the depreciation basis of property received in liquidation, we do not think that we are thereby forced to fix such basis by reference to the "exchange" category set forth in Section 1583e. To do so would be to say that a stockholder, simply by deciding to dissolve and liquidate the corporation, may acquire a depreciation base consisting of a book write-up of a value on which, very properly, no tax need be paid upon its receipt by the stockholder. We think it much more likely that Congress intended to have its express—and only—language in the District taxing statute on corporate distributions in liquidation point the way for handling the depreciation basis of property distributed in liquidation.

■ The deficiencies in income tax claimed by the District in this case for the years 1960 and 1961 are sustainable irrespective of whether petitioner be regarded as entitled to some, or no, depreciation in respect of these properties. This is because, in any event, the maximum allowable depreciation on any theory short of the "exchange" approach had already been availed of by petitioner in

option, use as the basis the market value of such property as of January 1, 1939; * * *."

3. The language quoted is as it first appeared in the Revenue Act of 1918, 40 Stat. 1059. See generally Darrell, Corporate Liquidations and the Federal Income Tax, 89 U.PA.L.REV. 907 (1941).

The present version is, in all material respects, the same. 26 U.S.C. § 331(a). The history of this provision is set out at length in our opinion in *Berliner, supra,* together with an extended discussion of the differences between the federal and District statutes with respect to capital gains taxation.

712

the earlier years. It is of interest to note, however, that the District did not, in brief and argument to us, assert that, because of the alleged inability of petitioner to bring herself within any of the categories of Section 1583e, she could claim no deduction at all. Rather, the District signified its agreement with the proposition that "real property which has been received in kind on a corporate dissolution, and which is subsequently used in a trade or business, can be depreciated, [even] absent a specific statutory provision governing proper basis for depreciation * * *." The District went on to say that it considered the proper basis of computation to be that prescribed by the Tax Court.

Thus it is that, although the particular liability for income tax asserted by the District against petitioner here may be upheld without the necessity of our ruling upon hypothetical depreciation deductions in cases not before us, it appears, from the District's representations to us, that it proposes to make such deductions available in its administration of the tax. It will be time enough for us to rule on any actual controversy which may develop in that regard when, if ever, it arises.

The decision of the Tax Court is

Affirmed.

DANAHER, Circuit Judge, separate views:

My colleagues see in our Code evidence of a "clear purpose on the part of Congress" to allow a deduction for depreciation. I say that Congress has permitted such a deduction *only* with respect to certain qualifying categories, particularly defined, and that the situation here is not included.

My colleagues say that the applicable section D.C.CODE § 47–1557b(a) (7), "does not further define the allowances permissible under it." I say that Congress was exclusively specific. If the transaction is not one for which a basis has been prescribed, no depreciation is

allowable. The pertinent language of the applicable section expressly provides:

"The basis upon which such allowances are to be computed is *the basis provided for in section 47–1583e.*" (Emphasis added.)

Congress might well have added, "that basis—and no other."

My colleagues say they see no necessity for further ruling now in view of their conclusion that our petitioner may not prevail in any event. I agree that the petitioner can not recover, but in my view, the case can not correctly be decided without our going to the heart of the issue.

So it is clear that we are at a "point of departure" if I may borrow their expression. Hence, it is my purpose to try to demonstrate that the real reason this petitioner should not now recover is that she was not entitled to deductions for depreciation in the years 1960 and 1961 or in any year. The business properties she had acquired as of January, 1953, did not then and do not now qualify under the specific language of the applicable sections of our Code.

The background setting from which our controversy emerges may briefly be stated.

I

For more than twenty years General Realties, Inc. had been engaged in the business of renting residential property, consisting of some 150 apartment properties. This individual taxpayer, Beatrice W. Oppenheimer, as of January 2, 1953, was a 50 per cent shareholder with a capital investment then valued at $49,-912.62. Pursuant to a plan of complete liquidation, the corporation as of that date was dissolved, and this taxpayer received as her share in distribution, assets, chiefly real estate, having a total value of $842,513.95. For federal tax purposes the transaction was tax-free. However, the District of Columbia tax authorities as of that time contended that the value of the assets distributed to her, less her capital investment, was a divi-

dend to the extent of $792,601.33 and was taxable as such.

The taxpayer claimed she was taxable only on so much of the distribution as constituted a dividend because only that amount, $135,248.75, payable out of the *earnings* of the corporation, constituted income to her. The balance of the distribution in kind represented appreciation in value of the corporate assets without realization of income, she contended. This court, affirming the District of Columbia Tax Court,[1] determined[2] that the Tax Court had been clearly right in holding that the corporation had never realized the appreciation in value of its assets, by sale or otherwise.

Coming to the instant case, we find the petitioner has alleged that in 1953 she had "exchanged" her stock for depreciable assets having a "market value" of $707,265.20. Thus she would take that figure as her "basis" in computing depreciation allowances. There had been no sale to establish that valuation, the figure having been arrived at by deducting her share of the dividend[3] from the "market value" of her half of the total distribution as shown on the corporation's books as of January 2, 1953.

The taxpayer in 1953 as the owner of an unincorporated business commenced to operate the rental properties, some 70 or more two-family and four-family houses, which had been distributed to her as described. Computing depreciation upon a basis representing the alleged market value of that portion of the property which she had received tax-free upon dissolution of the corporation, she took a deduction for the year 1953 in the amount of $83,825, and in succeeding years through 1959, the total depreciation claimed amounted to $421,663.61. She deducted as depreciation in 1960, $37,874.23, and for the year 1961, $34,124.75.

Those deductions were disallowed by the District's tax authorities on the ground that her "basis"[4] had been fully recovered in prior years. Thus, for the years 1960 and 1961 deficiencies in franchise tax were assessed against the taxpayer in the amount of $3,186.86, including interest, which amount was paid under protest. The Tax Court rejected the taxpayer's contentions, and the taxpayer here seeks relief.

## II

Title III, section 3(a) of the District of Columbia Income and Franchise Tax Act of 1947, D.C.CODE § 47–1557b(a) (7) (1961), 61 STAT. 337, provides that a taxpayer in computing net income may deduct from gross income:

"(7) *Depreciation.*—A reasonable allowance for exhaustion, wear, and tear of property used in the trade or business, including a reasonable allowance for obsolescence; \* \* \*. The

---

1. The Tax Court concluded that the taxpayer was entitled to a tax-free recovery of her capital, $49,912.62, and that she was liable for taxes only on that portion of the earned surplus amounting to $135,248.75 which had been distributed to her as a dividend, as defined in D.C.CODE § 47–1551c(m) (1961); 61 STAT. 332, as amended.

2. District of Columbia v. Oppenheimer, 112 U.S.App.D.C. 239, 301 F.2d 563 (1962). To what extent the corporation over the years may have claimed allowances for depreciation of the business properties, we were not told.

3. *Supra* note 1.

4. The District on brief asserts:
   "The proper basis of depreciation of the buildings, *in the absence of a control-*

*ling statute*, would be the petitioner's investment in the buildings. Just prior to dissolution, petitioner's pro rata share of capital or paid-in surplus as reflected on the books of the corporation was $49,912.62; of the earned surplus, $135,248.75; for a total of $185,161.37. This amount should be apportioned to the actual assets distributed on dissolution to determine, for purposes of depreciation, petitioner's investment in any or all of the assets distributed. The fair market value of the assets received ($842,513.95) does not represent petitioner's investment in those assets." (Emphasis added.)
Of course, there *is* a controlling statute.

*basis* upon which such allowances are to be computed is *the basis provided for in section 47–1583e."* Emphasis added.)

The latter section makes specific—and the Act's *only*—provision for depreciation, when and to the extent allowable, in four categories. As to property acquired *by purchase* after December 31, 1938, the basis is cost. Where the property is *inherited* or acquired by *gift* after December 31, 1938, the basis is that defined in subsection 47–1583(b) (3), 61 STAT. 351. Where the property was *acquired prior* to January 1, 1939, an appropriate basis elsewhere set forth is accorded to the property. None of the foregoing categories, concededly, has application here. Rather, the taxpayer insists that the transaction in question must fall within the language of section 47–1583e (b), 61 STAT. 351, which reads:

"(b) where the property was received *in exchange for other property* after December 31, 1938, *the basis shall be the market value thereof at the time of such exchange."* (Emphasis added.)

The Tax Court here held that none of the four categories defined in the "Depreciation" section of the Code, 47–1583e, 61 STAT. 351, reached the instant situation. The catalogue of incidents of acquisition, the decision said,

"does not include the receipt of property by a stockholder of a corporation distributed upon its dissolution, where that property is *not* a dividend, because it represents unrealized appreciation thereof. It is a *casus omissus,* unless

the omission was due to the legal fact that the property had no value upon which depreciation could be computed; and, therefore, a provision relating to depreciation of such property is not necessary or required."

Citing Berliner v. District of Columbia,[5] the Tax Court rejected the contention that the instant distribution of corporate assets upon dissolution had been such an "exchange" as to come within D.C.CODE § 47–1583e(b). The Tax Court commented additionally that there is no provision either in the District Code or in any regulation issued by the Commissioners which provides a basis for determining an allowance for depreciation of property distributed to a stockholder by a corporation upon its dissolution but which had not been taxable as a dividend. However, apparently deeming that unrealized appreciation in value of such assets should nevertheless when distributed be accorded some "basis," the Tax Court evolved its own formula concluding:

"that the correct basis for the determination of depreciation allowance was the amount of the petitioner's capital investment * * * of $49,912.62, plus the value of the portion of real estate distributed to her by the corporation that represented or reflected its earned surplus, which amounted to $135,248.75, less any portion thereof, of which the petitioner disposed since the acquisition thereof, and plus any subsequent capital improvements or additions thereto."

Utilizing that "basis" so devised which the petitioner has attacked as "peculiarly

---

5. There we had said:
"Had Congress intended that such a distribution be treated as an exchange, we think it would have omitted the reference to liquidating distributions in the definition of a dividend and would have included a provision similar to that which has appeared in the Federal statutes uninterruptedly since 1924. We must therefore reject the taxpayers' contention that the transaction should be held to be an exchange, the gain from which is excluded from gross income by Section 47–1557a(b) (11)." 103 U.S.

App.D.C. 351, 354–355, 258 F.2d 651, 654–655, cert. denied, 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958). The federal statute, 26 U.S.C. § 331(a) (1964), provided "Amounts distributed in complete liquidation of a corporation shall be *treated as in full payment in exchange for the stock."* (Emphasis added.)
The District's Code contains no such language.
And see 2 U.S.CODE CONG. & AD. NEWS, 84th Cong., 2d Sess., p. 2916 re § 3, P.L. 629, 70 STAT. 405, 406 (1956).

legislative," the Tax Court held that the amount of depreciation previously taken had exceeded "the correct basis of the real estate involved." Accordingly it was concluded that the deficiencies in franchise tax were validly assessed and must be affirmed.

### III

In the exercise of our review function we may affirm, modify, or reverse a decision of the District's Tax Court with or without remanding the case for hearing as justice may require.[6] I think we should reject the Tax Court's formula even as we affirm the judgment.

The Tax Court's opinion saw this case as "an attempt by a former stockholder of a corporation to establish a stepped-up depreciation basis of a portion of property which was distributed to her by the corporation upon its dissolution." The judge asserted that it "is a cardinal principle in the logic or science of taxation that a stepped-up, or change of basis is not permissible in cases of a non-taxable transfer." Nevertheless he undertook to construct a depreciation formula which to him seemed fair. But the allowance of deductions from gross income does not depend upon general equitable considerations, the Supreme Court has told us. It "depends upon legislative grace; and only as there is clear provision therefor

can any particular deduction be allowed." [7]

The District's statute is explicit in permitting a deduction from gross income for the depreciation,[8] wear and tear of property used in the taxpayer's business, but the allowance is to be computed *solely* upon "the basis provided for in section 47–1583e," text, *supra*. The taxpayer herself recognizes that to qualify, she must bring herself within one of the categories there defined.

Thus she argues that her basis was established by section 47–1583e(b), and so contends that the transaction involved was an "exchange." She says she received the rental properties at their market value in exchange for the corporate shares she had surrendered upon the dissolution. She thus would receive over the years by means of depreciation allowances, amounts equal to the previously unrealized appreciation in value of the properties. She has received as income upon which she paid no tax, more than four hundred thousand dollars, all as the result of the corporate dissolution, already tax-free as to the unrealized appreciated value of the properties she received. We should decide whether or not such a result from such an event can properly flow from the transaction now asserted to constitute an "exchange."

6. District of Columbia v. Seven-Up Washington, 93 U.S.App.D.C. 272, 275, 214 F.2d 197, 200, cert. denied, 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed. 1123 (1954).

7. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416, (1940).

8. A depreciation deduction "represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount *equal to the original cost.* * * * The amount of the [total allowable] depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties. Any other construction would permit a double deduction for the loss of the same capital assets." United States v. Ludey, 274 U.S. 295, 300–301, 47 S.Ct. 608, 610, 71 L.Ed. 1054 (1927). (Emphasis added.) Cf. Fribourg Nav. Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 276, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966). "It is not to be supposed that Congress, in allowing deductions of depreciation for tax purposes, intended that a taxpayer should recoup more than his investment in depreciated property." Union Bleachery v. United States, 73 F. Supp. 496, 502 (W.D.S.Car.1947), aff'd, 176 F.2d 517 (4 Cir. 1949), cert. denied, 339 U.S. 964, 70 S.Ct. 998, 94 L.Ed. 1373 (1950). Our petitioner had recovered her investment.

## IV

Obviously, this petitioner had only a stockholder's share interest [9] in the corporation as an entity. Her original investment had become the property of the corporation, to be employed by the company in the corporate enterprise. That capital "with whatever accretions and accumulations" [10] flowed from its use, had remained, short of liquidation, the property of the corporation. On January 2, 1953, she had received a complete return of her invested capital. She had received a dividend equal to her one half interest in the corporation's earned surplus. She also then received one half of the corporation's real estate assets, the value of which included the unrealized appreciation. Even as to a liquidating distribution of a corporation's accumulated earnings, much less as to the real properties here, we observed in Snow v. District of Columbia [11]:

"* * * such a distribution is not a payment in exchange for or in extinguishment of the stock upon which [the dividend] is declared."

The case law teaches that the word "exchange" [12] is to be given its ordinary meaning. Courts have frequently so treated the term as it occurs in our tax statutes.

"In this sense it means a mutual grant of equal interests, the one in consideration of the other. 'Exchange' is a word of precise import, meaning the giving of one thing for another, requiring the transfers to be in kind, and excluding transactions into which money enters either as the consideration or as a basis of measure." [13]

The corporation's assets here had not been transferred to this taxpayer "in exchange for other property," as the statute reads. Rather this record discloses that she had not transferred to the liquidating corporation any property of any value whatever.

The petitioner contends that there had been the same kind of transaction, "recognized to be a transfer of property for property" in Dupont Park Apartments, Inc. v. District of Columbia, 92 Wash.L. Rep. 1081, CCH DC CT ¶ 200–054 (1964). She tells us that the Tax Court there had held that such a distribution by the corporation was a "transfer of property" in "consideration" of the return of the shares. But that case came on for review by this court.

The *Dupont Park* record disclosed that the corporation upon liquidation had conveyed the corporation's assets to three trustees acting for the stockholders, pro rata. The fair market value of the property so transferred was $1,900,000, largely representing appreciation in value of the corporate assets, unrealized by the corporation. The Tax Court concluded that the distribution of the earned surplus of $207,000 (rounded) constituted a dividend which amount supplied [14] consideration for the deed. The Tax Court's opinion stated that such consideration

9. Eisner v. Macomber, 252 U.S. 189, 208, 40 S.Ct. 189, 64 L.Ed. 521 (1920). It is an individual interest which gives the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts. First National Bank of Boston v. State of Maine, 284 U.S. 312, 330, 52 S.Ct. 174, 76 L.Ed. 313 (1932).

10. Eisner v. Macomber, *supra* note 9, 252 U.S. at 211, 40 S.Ct. at 195.

11. 124 U.S.App.D.C. ——, 361 F.2d 523 (1965), rehearing *en banc* denied, (1966). And we rejected the contention that such a transaction should be held to be an exchange in Berliner v. District of Columbia, *supra* note 5.

12. Compare its use in "Exchanges," D.C. CODE § 47–1507 (1961), applicable to tax years prior to 1947, and § 47–1583b, "Exchange in reorganizations."

13. Trenton Cotton Oil Co. v. Commissioner of Int. Rev., 147 F.2d 33, 36 (6 Cir. 1945). Cf. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 249, 61 S.Ct. 878, 85 L.Ed. 1310 (1941); Old Colony R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484 (1932). And see Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965).

14. Contrary to Snow v. District of Columbia, *supra* note 11; and see Berliner v. District of Columbia, *supra* note 5.

was a "price or amount paid" by the stockholders for the real estate within the meaning of D.C.CODE §§ 45–723 and 45–724 (Supp. V, 1966).

But in reversing, we found that no price or amount had been paid or had been required to be paid. We said:

> "We cannot accept the District of Columbia Tax Court's conclusion that, by giving up their equity in what the court described as the 'realized value' of the real property, $207,335.03, which appeared on the corporation's balance sheet as earned surplus, the stockholders paid that amount for the deed." [15]

Thus neither in the *Dupont Park* case nor in any other of our decisions, can the petitioner find support for her contention here.[16] There simply is no authority under District Code section 47–1583e(b) to establish that an "exchange" results when a corporation is dissolved and its assets are distributed to its stockholders in accordance with their share interests. And this result stems from no mere inadvertence or overlooked "casus omissus," as the Tax Court's decision put it. It is a matter of basic principle.

Rather, Congress had purposely limited the allowance of deductions for depreciation of business properties to those categories specifically enumerated in section 47–1583e. Just as one of the purposes of a deduction for depreciation, when allowable, is to permit a taxpayer to recover his cost,[17] Congress has not pro-

vided that the value represented by unrealized appreciation in corporate assets, distributed upon dissolution of the corporation, shall be subject to depreciation. As to such value, this taxpayer had no cost to recover. There had been no "exchange." And upon that basis our decision should rest.

The taxpayer was not entitled to the claimed deductions which for the years 1953 through 1959 had exceeded $420,000.[18] She was not entitled to the deductions claimed for the years 1960 and 1961.

---

15. *Dupont Park Apartments, Inc. v. District of Columbia*, 120 U.S.App.D.C. 215, 216, 345 F.2d 109, 110 (1965).

16. Various other corporate transactions have involved efforts by the taxpayer to achieve tax-free status for nondividend distributions of unrealized appreciation of corporate assets. Inherent in our treatment of such cases is recognition of the marked differences between treatment provided in the Internal Revenue Code and that made possible under the District's Act. See as illustrative in addition to cases cited, *supra* notes 2, 5, 11, and 15, *Bord v. District of Columbia*, 120 U.S.App.D.C. 175, 344 F.2d 560 (1965); *Verkouteren v. District of Columbia*, 120 U.S.App.D.C. 361, 346 F.2d 842 (1965);

*Alper v. District of Columbia*, 120 U.S.App.D.C. 364, 346 F.2d 845 (1965); and *Estate of Uline v, District of Columbia*, 124 U.S.App.D.C. 5, 360 F.2d 820 (1966).

17. *Supra* note 8.

18. She had thus received, tax-free, a return based upon the stepped-up value of the non-dividend portion of the distribution, superimposed upon the original tax-free distribution of the same unrealized appreciation of the same corporate assets over and above her invested capital and the dividend portion of the corporate earned surplus. See note 1, *supra*; compare *Crane v. Commissioner of Internal Revenue*, 331 U.S. 1, 15–16, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947).