BETTY L. YOUNG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Young v. Commissioner
Docket No. 1008-75
United States Tax Court
T.C. Memo 1977-38; 1977 Tax Ct. Memo LEXIS 404; 36 T.C.M. (CCH) 165; T.C.M. (RIA) 770038; February 16, 1977, Filed Betty L. Young, pro se. Edward G. Lavery, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent has determined deficiencies in petitioner's Federal income tax for the taxable years 1971 and 1972 in the amounts of $2,076.12 and $181.00 respectively. Petitioner seeks a redetermination of her liability and seeks return of alleged overpayments made by her during *406 those years. The parties have raised two issues for our determination: 1. What amount, if any, of the loss sustained by petitioner when her property burned in 1972 is deductible under section 165; [1]
2. Whether the items comprising petitioner's claimed business loss for 1971 should be capitalized rather than deducted currently. FINDINGS OF FACT Petitioner, Betty L. Young, resided at Hermitage, Missouri at the time she filed a petition in this case. Although she was married to Lester Murphy (hereinafter Lester) at all times relevant to this case, she filed separate Federal income tax returns for the years 1969 through 1972, inclusive. In August 1967, petitioner and her husband took up residence at Fairbanks, Alaska, where petitioner was employed as a microbiologist by the United States Department of Health, Education and Welfare. In that year petitioner purchased a 2-1/2 acre tract of land at Fairbanks, Alaska for $10,000 in cash. Initially petitioner and her husband lived in a camper, but by October 1967 they were living in a house trailer on the property. *407 By 1969, they had planned the construction of a trailer court on petitioner's land, containing 20 trailer sites, to be operated as a business. Lester flew to Kansas City to purchase materials and equipment for the trailer court. He spent almost $13,000 in cash buying a truck, a Ford 8M tractor, a backhoe, two large pumps, 360 feet of 4-inch sewer pipes, and 2,000 feet of 1-1/4 inch water pipe. Lester transported these purchases to Alaska in the truck. Because the truck was overloaded, it broke down and became worthless soon after he arrived. During 1969, 1970, and 1971, petitioner and her husband constructed and managed the trailer court. About $2,000 of petitioner's funds were spent to install water, sewer, and electrical lines, and approximately $4,200 was also spent to install septic tanks. On Schedule C of her 1969 Federal income tax return, petitioner reported gross rental income of $494 from the trailer park. She deducted $3,055 for travel expenses incurred on the 1969 trip, and set up the newly-acquired equipment costing $5,311.19 on a straight line depreciation schedule. Depreciation was deducted for the full year in the total amount of $946.11. This resulted *408 in a net loss of $3,607.11 for the year from the trailer court business. On Schedule C of her 1970 Federal income tax return petitioner reported gross rental income of $510 and a net loss of $5,045.36 from the trailer court. In 1971, Lester began construction of a personal residence for himself and petitioner on the land. The house was a two-story, frame structure, 42 feet long and 22 feet wide, without a basement. The lower story consisted of a garage and greenhouse. The upper story contained one large bedroom, a living room, dining room, kitchen, laundry, and bathroom. Lester made another trip to Kansas City at this time to buy building materials for the house. He purchased a truck which he used to carry $5,000 worth of materials back to Alaska. These materials, for the interior of the house, included redwood paneling, plumbing, a water pump, a cast iron bathtub, cabinets, tile for the bathroom, and electrical wiring. Upon arriving in Alaska, Lester sold the truck for $1,500 less than its original cost. Other materials to complete the building of the home were purchased in Alaska. On Schedule C of her 1971 Federal income tax return petitioner reported gross rental *409 income of $453 from the trailer park. She claimed total expenses of $7,918, including a $2,629.84 loss on purchasing, transporting, and selling the truck. In addition, she deducted $946.11 as depreciation on the equipment acquired in 1969. The loss on the truck was incurred in connection with the house construction while the other deductions pertained to the trailer court construction. In his statutory notice of deficiency, respondent disallowed these 1971 deductions to the extent that they exceeded the gross income of $453, thereby disallowing $8,411.11 worth of claimed deductions. By November 1972, Lester had completed construction of the home and had moved his and petitioner's personal property into the house. On November 11, the new home was destroyed by fire. The house trailer and the construction equipment were not destroyed, but as a result of the fire, the water pipes to the trailer court froze and burst. Earlier in that year the house and contents had been insured against fire loss. The policy limits on liability were as follows: Dwelling
$46,000
Contents
23,000
After the fire, petitioner submitted lists of destroyed personal property *410 to the insurer, establishing their loss at $23,450, of which all but $1,000 worth of loss was to petitioner's property. In addition, three items were listed as antiques and no present value was estimated. Petitioner also lost a jeep which had cost $1,600, a set of tires for their truck, refined gold dust, and some silver money which had cost $3,000. These last four items were not on the insurance company's final list forming the basis of the insurance recovery. On December 6, 1972, the insurer's local claims adjuster estimated the loss on the dwelling to be $41,066. He based this upon the lower of two replacement estimates that were obtained. He also reported that the loss on the contents equalled at least the policy limit of $23,000. In a sworn proof of loss statement submitted to the insurance company, petitioner listed the actual cash value of her loss as $26,859 on the contents of her home and $41,545 on the building. In accord with this and the policy limitations the insurer compensated petitioner for her loss as follows: Building
$41,545
Contents
23,000
Additional living expenses [2]
1,250
$65,795
Less: Amount deductible
250
Insurance proceeds
$65,545
*411 On December 18, 1972, petitioner and her husband left Alaska to take up residence in Missouri. Petitioner sold the Alaskan real estate for $20,000 in 1973. OPINION The first issue presented is the amount of the casualty loss deductions to which petitioner is entitled. [3]The loss to petitioner's nonbusiness property caused by the fire is deductible under section 165(c)(3), but only to the extent that such loss exceeds $100 and is not compensated for by insurance or otherwise. The ultimate measure of the loss sustained is the difference between the fair market value of the property immediately before the fire and immediately thereafter, but the loss may not exceed the adjusted basis of the property. Section 165(a); section 1.165-7(b), Income Tax Regs.; *412 Helvering v. Owens,305 U.S. 468 (1939); Edmund W. Cornelius,56 T.C. 976 (1971); I. Hal Millsap, Jr.,46 T.C. 751 (1966), affd. on other issues 387 F. 2d 420 (8th Cir. 1968); Louis Briodo,36 T.C. 786 (1961). Therefore petitioner has the burden of proving: (1) the fair market value immediately before the fire of the damaged or destroyed property, (2) the fair market value immediately thereafter, and (3) the adjusted basis of the property. Millsap,supra, at 759. Turning first to the home itself, the main evidence presented as to the decrease in fair market value was the report of the insurance adjuster that replacement of the structure would cost $41,066, *413 and the insurance company's final settlement figure of $41,545. The context in which this decision between the insurance company and petitioner was made together with the extensive testimony as to the home and prices in Alaska lead us to conclude that the decrease in fair market value amounted to $41,545. See section 1.165-7(a)(2)(ii), Income Tax Regs.
However, petitioner's basis in the property is considerably less than the decrease in fair market value. This is due in part to the fact that Lester, petitioner's husband, did much of the construction work himself without pay, and in part because some of the materials were transported to Alaska from areas where they were less expensive. Petitioner established her basis through the testimony of Lester, who personally made most of the purchases, and testified from memory to the following expenditures: Land [4]
$ 2,000.00
Materials for interior purchased
in Kansas City
5,000.00
Cost of transporting above materials
to Alaska
2,629.84
Gables and siding
598.00
Two by fours
250.00
Ceiling joists
1,500.00
Sheeting
2,000.00
Insulation
1,000.00
Windows
850.00
Foundation slab
2,600.00
Furnace
3,000.00
Outside labor
4,000.00
Fuel burned while pouring concrete
30.00
$25,457.84
*414 It is also clear that petitioner must have spent additional amounts for garage and home doors, steps, fixtures, molding, flooring and stone for the fireplace. Considering's Lester's general testimony as to the structure and as to prices in Alaska, we consider $4,500 a conservative estimate of such expenses which we allow under the rule of Cohan v. Commissioner,39 F. 2d 540 (2nd Cir. 1930). Therefore, we determine petitioner's basis to be $29,957.84. Section 1033(a) provides that where property is involuntarily converted (as, for example, through destruction by fire), into money, "the gain (if any) shall be recognized" *415 except to the extent that the destroyed property is replaced by like kind property qualifying under section 1033(a)(2)(A). Since petitioner has offered no evidence to indicate that her home was replaced with a new residence qualifying under section 1033(a)(2)(A), petitioner must recognize a gain to the extent that the insurance proceeds received in reimbursement for the home's destruction, $41,545, exceed her $29,957.84 basis. This $11,587.16 gain is ordinary income. Helvering v. William Flaccus Oak Leather Co.,313 U.S. 247 (1941). As to the personal property lost in the fire, petitioner introduced into evidence a list given to the insurance company which includes items owned by her amounting to $22,405. The insurance adjuster concluded that petitioner has established losses on the contents that justified paying the maximum amount ($23,000) allowable under the policy. Lester testified that the list did not include all the items lost and that the total cost of items lost amounted to $35,000 to $36,000. However, he did not testify as to the condition or particular characteristics of the items which burned in the fire. Since the insurance company settled for *416 the maximum amount under the terms of the insurance policy, petitioner's loss may have exceeded the amount recovered. But we cannot, even under Cohan v. Commissioner,supra, estimate how much that amount, if any, might be on the record before us. I. Hal Millsap, Jr.,46 T.C. 751 (1966), affd. on other issues 387 F. 2d 420 (8th Cir. 1968). Petitioner, therefore, received insurance proceeds equal to her loss on the list submitted to the insurance company. Lester did, however, specifically testify as to four items which were not on the list submitted to the insurance company: a $1,600 jeep, a new set of tires, $2,000 worth of refined gold dust, and $3,000 of silver money. Lester's testimony is ambiguous on the value and basis of the tires and gold dust, and we must resolve the ambiguities against petitioner. While we believe the tires and gold dust had value and were lost in the fire, there is simply no evidence as to their cost or fair market value before the fire. We must, therefore, disallow any deduction for the tires and gold dust. However, while not as clear as we would like, we interpret the testimony relative to the *417 jeep to mean that it cost $1,600, and that this was its value in Alaska when it was destroyed in the fire. We make a similar finding with regard to the silver money which petitioner testified was worth $3,000. [5]
In addition to the nonbusiness property, underground water pipes used in connection with the trailer court business, froze and burst. The loss thus sustained was clearly "incurred in a trade or business" and hence deductible under section 165(c)(1) without regard to the $100 deductible made applicable to casualty losses on nonbusiness property by section 165(c)(3). After considering all of the testimony, we determine that petitioner's basis in the pipes and also the loss sustained upon their bursting is equal to $9,500. In summary, petitioner recognizes $6,987.16 worth of ordinary income due to the damage done by the fire to her nonbusines property (comprised of an $11,587.16 gain on the home, a $1,600 loss on the jeep, and a $3,000 loss on the silver), and $9,500 worth of loss on the business property for a net loss due *418 to the casualty of $2,512.84. We turn now to the final issue concerning the capitalization of expenditures claimed as current business expenses. On her 1971 income tax return petitioner reported $453 of income from the trailer court business and took the following deductions: Truck parts
$ 423.00
Cost of labor
3,443.52
Materials and supplies
412.11
Truck related expenses
2,629.84
Depreciation
946.11 $6Truck tires
217.00
Tractor parts
151.00
Truck and tractor operations
270.53
Snow removal
130.60
Water and sewer thaw
250.40
Total
$ 8,874.11
Respondent does not question the amounts of these expenditures but takes the position that they constituted capital expenditures rather than currently deductible expenses. We have previously included the truck related expenses in the basis of the home. [6] Since it was not used in connection with the trailer park it is neither currently deductible nor should it be capitalized as part of the business. Lester testified that the labor expense was incurred to prepare the trailer sites for rental. It is clear that this expense is capital in nature and not currently *419 deductible. Similarly we find that the materials purchased were also capital improvements rather than mere repairs. The expenditures for truck tires, truck parts, tractor parts, and truck and tractor operations, and the depreciation on construction equipment ( $465) were not expenses directly incurred in the operation of the trailer camp, but rather in the construction of capital assets. As such they must be capitalized and depreciated over the useful life of the asset constructed. Commissioner v. Idaho Power Co.,418 U.S. 1 (1974). Since all of the above items should be capitalized they will increase the basis upon which depreciation of the items constructed may be taken. The remainder of the depreciation ($481.11) plus the costs of snow removal and repairs deducted under the heading "water and sewer thaw" are all deductible currently under sections 167 and 162. These expenses reflect the costs incurred in operating the business rather than capital outlays in constructing the trailer park. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified.↩
2. Insurance proceeds paid to reimburse an individual for living expenses incurred due to the destruction or damage to his home by fire or other casualty are excluded from gross income under sec. 123. Such proceeds are not compensation for casualty loss and do not decrease the amount of loss otherwise allowed under sec. 165↩.
3. At trial petitioner moved for an order of dismissal and decision in her favor on the basis of alleged acts of misconduct by respondent. This motion was denied. Petitioner, in renewing her argument on brief, again demonstrates that the relation between the parties is far from amicable. Nevertheless, there is no basis for the remedy petitioner requests. Cf. Greenberg's Express, Inc.,62 T.C. 324↩ (1974).
4. Petitioner purchased 2-1/2 acres of land for $10,000, but only used part of it for residential purposes; the rest was used as a trialer park. Only the cost of that portion used for residential purposes may be included in determining petitioner's basis for purposes of sec. 165. See sec. 1.165-7(b)(2), Income Tax Regs.; Ray F. Keefer,63 T.C. 596↩ (1975). In the absence of contrary evidence, we determine that the residence occupied one half an acre and therefore allocate one-fifth of the purchase price to petitioner's basis.
5. Indeed, respondent requested a finding that "petitioner lost a jeep which had cost $1,600, and some silver bullion which had cost $3,090."↩
6. See footnote 4, supra.↩